

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-22-2003

# Ogbudimkpa v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 02-1181P

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Ogbudimkpa v. Atty Gen USA" (2003). *2003 Decisions.* Paper 298.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/298

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed August 22, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1181

CHRISTOPHER OGBUDIMKPA,

Appellant

v.

JOHN ASHCROFT, Attorney General
of the United States;
KENNETH JOHN ELWOOD, District Director,
INS Philadelphia District

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 01-cv-01511)
District Judge: Honorable James M. Munley

Argued June 26, 2003

Before: SLOVITER, AMBRO, *Circuit Judges*,
and TUCKER,* *District Judge*

(Opinion Filed: August 22, 2003)

---

* Honorable Petrese B. Tucker, United States District Court Judge for the
Eastern District of Pennsylvania, sitting by designation.

Timothy C. Hester, Esquire
Kevin C. Newsom, Esquire (Argued)
Covington & Burling
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

   Attorneys for Petitioner

Kate L. Mershimer, Esquire
Office of the United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA 17108

Ethan B. Kanter, Esquire
United States Department of Justice
Office of Immigration Litigation
1331 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Robert D. McCallum, Jr.
  Assistant Attorney General
  Civil Division
Michael P. Lindemann
  Assistant Director
Christopher C. Fuller (Argued)
  Senior Litigation Counsel
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, D.C. 20044

   Attorneys for Respondent

---

**OPINION OF THE COURT**

---

AMBRO, *Circuit Judge*:

We decide whether a district court has jurisdiction to consider a *habeas corpus* petition that alleges violations of Article 3 of the United Nations Convention Against Torture

("CAT").[1] Congress has implemented CAT[2] by enacting the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA").[3] Because generally we do not infer Congressional intent to repeal *habeas* jurisdiction, and because FARRA's jurisdictional provisions do not specifically foreclose *habeas corpus* jurisdiction under 28 U.S.C. § 2241, the general *habeas* statute, we hold that CAT claims are cognizable under § 2241. We therefore reverse the District Court's dismissal for lack of jurisdiction of Christopher Ogbudimkpa's *habeas corpus* petition and remand so that it may consider the merits of his petition.

## I. Facts and Procedural History

Ogbudimkpa is a citizen of Nigeria who entered the United States in 1982 on a non-immigrant student visa. In 1985 an Immigration Judge ("IJ") ordered Ogbudimkpa to be deported for remaining longer than his visa permitted and for working without Government authorization, under Immigration and Nationality Act ("INA") § 241(a)(9), 8 U.S.C. § 1251(a)(9) (current version at 8 U.S.C. § 1227(a)(1)). The Immigration and Naturalization Service ("INS") did not immediately remove him. In 1994 Ogbudimkpa was convicted and sentenced on state drug charges and, upon his release from prison in 1996, paroled to INS custody.

In 1999 the Board of Immigration Appeals ("BIA") granted Ogbudimkpa's motion to reopen his removal proceedings so that he might seek protection under Article 3 of CAT, which provides that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Ogbudimkpa testified that, if he were returned to Nigeria, he would be imprisoned, tortured, or possibly executed by "his extended

---

1. The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment of Punishment, G.A. Res. 39/46, Annex, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984).

2. To facilitate ease of understanding, we adopt colloquial usage by eliminating "the" before "CAT" and the later-defined "FARRA," "IIRIRA" and "AEDPA."

3. Pub. L. No. 105-277, div. G, Title XXII, § 2242, 112 Stat. 2681, 2681-822 (1998) (codified as Note to 8 U.S.C. § 1231).

family members, one of whom is a senator, past president of the Nigerian government, and another who holds the rank of major either in the police or the military." The IJ concluded that Ogbudimkpa had testified credibly, but had not demonstrated that it was more likely than not he would be tortured if returned to Nigeria. The BIA affirmed the IJ's decision.

Ogbudimkpa filed a *pro se* Motion for Emergency Stay of Removal in the United States District Court for the Middle District of Pennsylvania, arguing that the United States Attorney General had erred in not granting him relief from removal under Article 3 of CAT. The District Court treated this motion as a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241. In the first set of what became a game of forum ping pong, the Government moved to dismiss for lack of jurisdiction, arguing that the Circuit Court was the proper forum for Ogbudimkpa's CAT claims.[4] Ogbudimkpa (continuing to act *pro se*) petitioned the District Court to transfer his case to our Court, and the Government consented. But upon transfer of the case to our Court, the Government again moved to dismiss for lack of jurisdiction, claiming the jurisdictional bar of § 309(c)(4)(G) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (" IIRIRA") applied to Ogbudimkpa because of his status as a criminal alien, even though the criminal conviction did not form the basis of the charges of deportation. This was exactly the opposite tack to the one taken by the Government in the District Court.[5] Unaware of

---

4. To the District Court, the Government argued that, under § 2242 of FARRA, only our Court had jurisdiction to review his claim because FARRA provides that review may only be had for final orders of deportation, and the courts of appeals have exclusive jurisdiction to conduct that review. The Government noted that, if the basis of the order of removal of Ogbudimkpa had been his criminal conviction, then § 309(c)(4)(G) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 would preclude our Court from exercising jurisdiction, and in that situation his only recourse would be to file a *habeas* petition in the District Court. However, "the basis of the charges of deportation against [Ogbudimkpa] was not because he was a criminal alien," but because he had violated the conditions of his visa. Hence, we would have jurisdiction.

5. We caution that the Catch-22 tactics of the Government are inappropriately confusing and misleading, especially when used against a *pro se* litigant.

the "whipsawing" procedural posture of this case, we granted the Government's motion to dismiss in an unpublished (and of course non-precedential) judgment order.[6] In doing so we noted the possibility that Ogbudimkpa might petition for a writ of *habeas corpus*.[7]

---

6. The issue raised by the Government's flip-flopping positions — whether the jurisdictional bar applies only where the INS actually charges the criminal conduct as the basis for removal (as the Government conceded in the District Court) or whether it is a status-based bar and applies to any alien with an applicable criminal conviction (as the Government argued before us) — has resulted in a circuit split. *Compare Lopez-Elias v. Reno*, 209 F.3d 788, 793 (5th Cir. 2000) (basis of charge for removal immaterial for purposes of jurisdictional bar); *Fernandez-Bernal v. Attorney General*, 257 F.3d 1304, 1310 (11th Cir. 2001) (same) *with Choeum v. INS*, 129 F.3d 29, 38 (1st Cir. 1997) (jurisdictional bar applies only when criminal conduct is basis of charge for removal); *Yousefi v. INS*, 260 F.3d 318, 324-25 (4th Cir. 2001) (same); *Briseno v. INS*, 192 F.3d 1320, 1322-23 (9th Cir. 1999) (same). We have not addressed this issue in a published opinion, and do not do so in this case.

7. Ogbudimkpa argues that the District Court erred in ignoring the law of the case as set forth by this unpublished judgment order. Under the law-of-the-case doctrine, "once an issue has been decided, parties may not relitigate that issue in the same case." *Waldorf v. Shuta*, 142 F.3d 601, 616 n.4 (3d Cir. 1998). Because, in dismissing Ogbudimkpa's petition, we stated that Ogbudimkpa "may seek review of his claims before the District Court in a *habeas corpus* proceeding," Ogbudimkpa argues that we have decided that the District Court has jurisdiction to hear his *habeas corpus* claims.

We shall not impute the resolution of a complicated issue from *dictum* in a judgment order. *Dicta* statements are not binding law of the case. *See United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 397 (3d Cir. 2003). Similarly, courts may refuse to infer decisions on issues that were barely presented, or from summary decisions. 18B Charles A. Wright *et al.*, *Federal Practice and Procedure* § 4478 (2d ed. 2002); *see also Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 848 n.6 (6th Cir. 2000) (refusing to presume that "footnote tersely stating [the conclusion] without discussion" constituted law of the case).

Ogbudimkpa argues that we were obliged to decide the issue at the time of the Government's motion and cites to *Liang v. INS*, 206 F.3d 308 (3d Cir. 2000). In *Liang*, we concluded that IIRIRA divests courts of

Back yet again in District Court, Ogbudimkpa (still acting *pro se*) filed a petition for *habeas* relief that essentially replicated the petition he had filed in November 2000. The Government moved to dismiss for lack of subject matter jurisdiction and the District Court granted that motion, concluding that it lacked jurisdiction to consider his petition.[8] This appeal followed,[9] an appeal in which Ogbudimkpa has been superbly represented by appointed counsel.[10]

---

appeals of jurisdiction over certain petitions for review, but that district courts retain their general *habeas* jurisdiction under § 2241 to consider the lawfulness of the removal orders. 206 F.3d at 319. We noted that the "determination of our jurisdiction over [aliens'] petitions for review is inextricably intertwined with the question whether the district courts have continued habeas jurisdiction." *Id.* at 312. But we are not persuaded by this argument that the two decisions are necessarily intertwined. In *Liang*, we affirmatively noted our intent to resolve the issue whether district courts had *habeas corpus* jurisdiction. *Id.* We find no intent to resolve the issue presented in this case in our prior unpublished judgment order.

8. The District Court concluded that it lacked jurisdiction to review Ogbudimkpa's claims in part because there is no judicial review under FARRA "except as part of the review of a final order of removal pursuant to section 242 of the [INA]" and because Ogbudimkpa's final order of removal was issued pursuant to § 241(a)(9), not § 242 of the INA. As Ogbudimkpa notes, and as the Government conceded at oral argument, what occurs pursuant to § 242 of the INA is judicial review, not the issuance of final orders of removal. All final orders of removal are issued pursuant to another section, such as § 241(a)(9). *Compare* INA § 242 (setting forth procedure for judicial review of orders of removal) *with* § 241(a) (listing deportable aliens). If the District Court's interpretation of FARRA were correct, then no court would ever have jurisdiction because no final orders are issued pursuant to § 242 of the INA. Because the District Court based its conclusion that it lacked jurisdiction on another ground, we note this error only in passing.

9. We have jurisdiction to review the final decision of the District Court under 28 U.S.C. § 1291. Our review of jurisdictional questions is plenary. *Allied Signal Recovery Trust v. Allied Signal, Inc.*, 298 F.3d 263, 267 (3d Cir. 2002).

10. The Court is grateful for the outstanding efforts of appointed counsel Kevin C. Newsom and Timothy C. Hester of the Covington & Burling law firm in Washington, D.C. Their briefs and advocacy exhibit both an exceptional amount of research and a high level of craftsmanship.

## II.  Discussion

### A.  Background

#### 1.  *The Convention Against Torture*

The United Nations drafted CAT in order to "make more effective the struggle against torture and other cruel, inhuman or degrading treatment or punishment throughout the world." United Nations: Draft Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N. Doc. E/CN.4/1984/72, Preamble (1984). On December 10, 1984, the United Nations General Assembly adopted CAT by unanimous agreement. Committee on Foreign Relations, Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, S. Exec. Rep. No. 101-30, at 2 (1990).

President Reagan signed CAT on April 18, 1988, *id.*, with the following reservation: "The Government of the United States of America reserves the right to communicate, upon ratification, such reservations, interpretive understandings, or declarations as are deemed necessary." United Nations Treaty Collection: Declarations and Reservations, http://www.unhchr.ch/html/menu3/b/treaty12_asp.htm.   One month later, the President transmitted CAT to the Senate for approval, with nineteen proposed "reservations, understandings, and declarations," including the "declaration that [CAT] is not self-executing," and the assurance that "[t]he recommended legislation necessary to implement [CAT] will be submitted to the Congress separately." S. Treaty Doc. No. 100-20, iii, vi (1988).[11]

---

11. The President's message also stated: "Although the terms of [CAT], with the suggested reservations and understandings, are consonant with U.S. law, it is nevertheless preferable to leave any further implementation that may be desired to the domestic legislative and judicial process. The following declaration is therefore recommended, to clarify that the provisions of [CAT] would not of themselves become effective as domestic law: "The United States declares that the provisions of Articles 1 through 16 of [CAT] are not self-executing." S. Treaty Doc. No. 100-20, at 2.

The Senate adopted a resolution of advice and consent to ratification of CAT, subject to the declaration that it be deemed non-self-executing, on October 27, 1990. 136 Cong. Rec. 36,198 (1990). The instrument of ratification included the declaration that "the provisions of articles 1 through 16 of [CAT] are not self-executing." United Nations Treaty Collection: Declarations and Reservations, http://www.unhchr.ch/html/menu3/b/treaty12_asp.htm. On October 21, 1994, President Clinton deposited the instrument of ratification with the United Nations. Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478-01 (Feb. 19, 1999).

### 2. *FARRA*

To implement Article 3 of CAT, Congress passed FARRA in 1998. FARRA § 2242(a) provides that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." Section 2242(b) of FARRA requires "the heads of the appropriate agencies" to "prescribe regulations to implement the obligations of the United States under [CAT's] Article 3." Accordingly, the Department of Justice (of which the INS at that time was a division) promulgated regulations delineating the procedures for deciding CAT claims. Pursuant to 8 C.F.R. § 208.16(c)(2), if an alien can demonstrate that it is "more likely than not" that he or she would be tortured if removed to a particular country, the INS must grant him or her protection. Depending on the status of the alien, that protection may take the form either of permanent withholding of removal or of temporary deferral of removal. 8 C.F.R. § 208.16(c)(4). The latter protection exists only until changed conditions in the

---

In response to criticisms of the Senate Foreign Relations Committee, President Bush submitted a "revised and reduced list" of twelve proposed conditions in January 1990. S. Exec. Rep. No. 101-30, at 2. The Committee concluded that the revised list "in large measure eliminate[d] th[e] problem" and recommended ratification. *Id.* at 2, 4.

proposed country of removal make it no longer more likely than not that the alien will be tortured if returned. 8 C.F.R. § 208.17(b).

At issue in this case are the jurisdictional provisions of FARRA and whether they preclude district courts from exercising *habeas* jurisdiction over claims alleging violations of CAT. Section 2242(d) of FARRA contains a jurisdiction-limiting provision and a jurisdiction-consolidating provision. The jurisdiction-limiting provision denies federal courts the power to review the regulations promulgated under FARRA. *Id.* The jurisdiction-consolidating provision[12] prescribes that CAT claims may be considered only as part of final orders of deportation reviewed pursuant to § 242 of the INA, 8 U.S.C. § 1252. *Id.* ("[N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under [CAT] or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act.").

While on its face FARRA's zipper clause acts only to *consolidate* jurisdiction in one action in the court of appeals, its effect is also to *limit* the extent to which courts of appeal may exercise that jurisdiction. Section 2242(d) of FARRA provides that only CAT claims that arise in the context of final orders of removal may be reviewed by the courts of appeal. But FARRA is not the first federal enactment to affect courts' jurisdiction in immigration proceedings. IIRIRA "expressly precludes the courts of appeals from exercising 'jurisdiction to review any final order of removal against any alien who is removable by reason of' a conviction for certain criminal offenses, including any aggravated felony." *See Calcano-Martinez v. INS*, 533 U.S. 348, 350 (2001) (citing 8 U.S.C. § 1252(a)(2)(C)).[13] By confining judicial review to final orders

---

12. This type of provision is often referred to as a "zipper clause" as it "consolidates or 'zips' judicial review' of immigration proceedings into one action in the court of appeals." *Mahadeo v. Reno*, 226 F.3d 3, 12 (1st Cir. 2000); *accord INS v. St. Cyr*, 533 U.S. 289, 313 (2001).

13. Indeed, IIRIRA was not the first statute to limit the jurisdiction of the federal courts in immigration proceedings. The Antiterrorism and

of removal, which are unreviewable if the petitioner has committed certain crimes, FARRA prevents the courts of appeals from reviewing CAT claims raised in deportation proceedings by aliens with certain criminal convictions.

### 3. *St. Cyr*

We follow the breadcrumb trail to the Supreme Court's opinion in *INS v. St. Cyr*, 533 U.S. 289 (2001), which may provide an answer to the question whether *habeas* relief remains available. *St. Cyr* decided this issue with respect to, *inter alia*, IIRIRA,[14] which contains a jurisdictional

---

Effective Death Penalty Act of 1996 ("AEDPA"), was enacted on April 24, 1996. Pub.L. No. 104-132, 110 Stat. 1214. It added a new provision to the immigration laws that "[a]ny final order of deportation against an alien who is deportable by reason of having committed [an enumerated crime] shall not be subject to review by any court." AEDPA § 440(a), 110 Stat. at 1276. Six months later, Congress enacted IIRIRA. Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

Relevant to this case are the provisions of IIRIRA that consolidate and limit judicial review in removal proceedings. IIRIRA, like FARRA, contains a zipper clause that consolidates and limits judicial review in removal proceedings to review of final orders of removal under INA § 242, 8 U.S.C. § 1252. IIRIRA § 306(a) (codified at INA § 242(b)(9), 8 U.S.C. § 1252(b)(9)) ("Judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."). The scope of this provision is, as yet, not fully clear. *Calcano-Martinez*, 533 U.S. at 350 n.2.

IIRIRA also codified AEDPA's jurisdiction-limiting provision mentioned *supra* note 13. 8 U.S.C. § 1252(a)(2)(C). Under IIRIRA's transitional rules (applicable to removal proceedings commenced before April 1, 1997), IIRIRA § 309(c)(4)(G), "there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed" certain enumerated criminal offenses. 110 Stat. 3009-546, 626-27. Under IIRIRA's permanent rules (applicable to removal proceedings commenced after April 1, 1997), IIRIRA § 306(a), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" certain enumerated criminal offenses. (codified at INA § 242(a)(2)(c), 8 U.S.C. § 1252(a)(2)(c)).

14. At issue in *St. Cyr* were two provisions of IIRIRA (codified in three separate sections of the United States Code), §§ 306 and 306(a) (codified

provision similar to FARRA. The Supreme Court held that the jurisdiction-limiting provisions of IIRIRA (which deprive appellate courts of the right to review the final orders of removal of certain classes of criminal aliens) did not contain a sufficiently explicit statement of Congress' intent to deprive district courts of their pre-existing *habeas* jurisdiction to effect that foreclosure.[15] 533 U.S. at 314. As a result, the Court concluded that *habeas* relief remained available under 28 U.S.C. § 2241 to raise challenges to petitioners' final orders of deportation. *Id.*

Two canons of statutory construction guided the Supreme Court's analysis in *St. Cyr.* One canon provided a reason to conclude that the statute did not foreclose *habeas* review; the other made that construction possible.

The Court invoked the canon of constitutional avoidance: "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems." *Id.* at 299-300 (internal citations omitted). Here, the "serious constitutional problem" that concerned the Court was the potential violation of the Constitution's Suspension Clause implicated by foreclosure of *habeas* review.[16] Construing the statute to allow for *habeas* review

---

at 8 U.S.C. §§ 1252(a)(1), 1252(a)(2)(C), and 1252(b)(9)). *St. Cyr* also dealt with a jurisdiction-limiting provision of AEDPA — § 401(e) — that repealed former INA § 106(a)(10), which provided, *inter alia*, *habeas* relief for an alien in custody pursuant to a deportation order. *St. Cyr*, 533 U.S. at 309. We refer primarily to *St. Cyr*'s interpretation of IIRIRA because it is IIRIRA that more closely mirrors the language of FARRA.

15. We had reached the same conclusion the previous year in *Liang*, 206 F.3d at 319.

16. The Suspension Clause provides that "[t]he privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. 1, § 9, cl. 2. As the Court noted in *St. Cyr*, there are differing opinions as to the scope of the Suspension Clause and whether it protects the writ only to the extent it was available in 1789, as it existed after the 1867 amendment extending the writ to state prisoners, or in its current form as a result of subsequent legal developments. 533 U.S. at 300-01.

would avoid a potential Suspension Clause issue, thus not requiring the Court "to answer the difficult question of what the Suspension Clause protects." *Id.* at 301 n.13.[17]

The second canon of construction invoked by the Court was the plain statement rule. This rule is designed "to ensure that, absent unambiguous evidence of Congress's intent, extraordinary constitutional powers are not invoked, or important constitutional protections eliminated, or seemingly inequitable doctrines applied." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 546 (1992) (Scalia, J., concurring). Here, both the extraordinary power of Congress to eliminate all Article III review of the deportation orders of certain aliens and the elimination of the important constitutional protections embodied by the Suspension Clause were at issue. "[W]hen a particular interpretation of a statute invokes the outer limits of Congress' power" — here, the power to deprive the courts of all jurisdiction to review certain types of cases — "we expect a clear indication that Congress intended that result." *St. Cyr,* 533 U.S. at 299 (citing *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575 (1988)).[18] And there exists a "longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." *St. Cyr,* 533 U.S. at 298 (citing *Ex parte Yerger,* 8 Wall. 85, 102 (1869)). "Implications from statutory text or legislative history are not sufficient . . . ; instead Congress must articulate specific and unambiguous statutory directives to effect a repeal" of *habeas*

---

17. The Supreme Court did suggest that the Suspension Clause might be violated if *habeas* review were to be foreclosed in the immigration context. It noted that because of the Clause, " 'some judicial intervention in deportation cases' is unquestionably 'required by the Constitution.' " *St. Cyr,* 533 U.S. at 300 (quoting *Heikkila v. Barber,* 345 U.S. 229, 235 (1953)). At the very least, it protects the writ of *habeas corpus* as it existed in 1789. *Id.* at 301. "At its historical core" the writ of *habeas corpus* was designed to provide a means for "reviewing the legality of Executive detention" and hence it is in this context that the writ's protections are at their strongest. *Id.*

18. If *habeas* review was unavailable for these petitioners, there would be "an absence of [a judicial] forum" to hear their claims. *St. Cyr,* 533 U.S. at 314.

jurisdiction. *Id.* at 299; *see also Felker v. Turpin*, 518 U.S. 651, 660-61 (1996) (declining to conclude that Title I of AEDPA repealed *habeas* jurisdiction because it did not explicitly mention *habeas corpus*);[19] *Demore v. Kim,* ___ U.S. ___, ___, 123 S. Ct. 1708, 1714 (2003) (concluding that district court had jurisdiction to consider *habeas corpus* claim challenging statute permitting aliens to be held indefinitely without bail despite language stating that "[n]o court may set aside any action or decision by the Attorney General" because "where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent").

In the context of these principles, the Court concluded that the language of IIRIRA was not sufficiently precise to repeal the *habeas* jurisdiction theretofore available via 28 U.S.C. § 2241. None of the jurisdiction-limiting provisions that the Government alleged divested the district court of *habeas* jurisdiction contained a "clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas." *St. Cyr*, 533 U.S. at 314. In particular, they did not "explicitly mention[] habeas, or 28 U.S.C. § 2241." *Id.* at 312. As a result, the Court concluded, no provision of IIRIRA "speaks with sufficient clarity to bar jurisdiction pursuant to the general habeas statute." *Id.* at 312-13.

### B. Cognizability of *Habeas Corpus* Claims Under FARRA

Notwithstanding the above, the District Court in this case concluded that it lacked *habeas* jurisdiction under 28 U.S.C. § 2241 to consider claims arising under CAT and its implementing legislation and regulations. After consideration of the parties' arguments, we conclude that FARRA's jurisdictional provisions do not preclude *habeas* jurisdiction.

As noted above, two provisions of FARRA affect the jurisdiction of the federal courts. Only one is relevant to

---

19. *Felker* involved provisions of AEDPA, entirely unrelated to those at issue in *St. Cyr*, that provide *habeas* relief to persons confined pursuant to a state-court conviction. 518 U.S. at 656.

this case. FARRA's jurisdiction-limiting provision provides that "[n]o court shall have jurisdiction to review the regulations adopted to implement this section." FARRA § 2242(d). Here, however, Ogbudimkpa does not challenge the regulations themselves, but the IJ's application of the regulations to his case, and thus this provision is not implicated. At issue here is whether the jurisdiction-consolidating clause in § 2242(d), which limits courts' jurisdiction to consider CAT claims to the review of final orders of removal, precludes *habeas* review.

### 1. Applying *St. Cyr*'s Principles

Guided by *St. Cyr*'s analysis of a similar provision in IIRIRA, we join the First, Second and Ninth Circuits in concluding that, because § 2242(d) of FARRA fails to state explicitly that a district court may not exercise jurisdiction over *habeas corpus* claims or mention 28 U.S.C. § 2241, the District Court retains that jurisdiction.[20] *St. Cyr*, 533 U.S. at 312 (holding that a statute must "explicitly mention[] habeas, or 28 U.S.C. § 2241," to "speak[] with sufficient clarity to bar jurisdiction pursuant to the general habeas statute"); *see also Demore*, 123 S.Ct. at 1714 (describing *St. Cyr* as "establish[ing] 'a superclear statement, "magic words" requirement for the congressional expression of' an intent to preclude habeas review") (quoting *St. Cyr*, 533

---

20. Prior to the Supreme Court's decision in *St. Cyr*, the Ninth Circuit concluded that *habeas* review was available for CAT claims. *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1015-16 (9th Cir. 2000). The Court reasoned that, although § 2242(b) of FARRA did not provide a new grant of jurisdiction to federal courts, nothing precluded them from "look[ing] to existing jurisdictional statutes to entertain a petition for review." *Id.* at 1015. After *St. Cyr*, the First and Second Circuits recently concluded as well that *habeas* review is available for CAT claims. *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003); *Wang v. Ashcroft*, 320 F.3d 130, 141 (2d Cir. 2003).

We note that several district courts in this Circuit have anticipated our holding in this case, apparently assuming that, as a result of *St. Cyr*, district courts have jurisdiction to consider *habeas corpus* claims alleging CAT or FARRA claims. *See, e.g., Builes v. Nye*, 239 F. Supp. 2d 518, 525 (M.D. Pa. 2003); *Chinchilla-Jimenez v. INS*, 226 F. Supp.2d 680, 683 (E.D. Pa. 2002).

U.S. at 327 (Scalia, J., dissenting)); *Wang*, 320 F.3d at 141 ("[A] statute must, at a minimum, explicitly mention either 'habeas corpus' or '28 U.S.C. § 2241' in order to limit or restrict § 2241 jurisdiction.").

We note first that the same constitutional concern that guided the Supreme Court to its conclusion in *St. Cyr* is present in this case. As in *St. Cyr*, the Government asks us to interpret a statute in a way that would foreclose an individual's ability to invoke the writ of *habeas corpus.* To determine whether this foreclosure violates the Suspension Clause of the Constitution would require us to construe that Clause's scope, a task the Supreme Court concluded should be a last resort in light of the considerable differences of opinion on the breadth of the Clause. 533 U.S. at 301 n.13. The danger of a Suspension Clause violation here is as acute as in *St. Cyr* because this case involves the "historical core" of the writ of *habeas corpus*: providing a means for "reviewing the legality of Executive detention," including the detention of aliens. *Id.* at 301. We decline to consider the Government's argument that " '[a]cknowledging no habeas corpus remedy for a narrow subject-matter category of claims does not effect an outright 'suspension' of the writ of habeas corpus." Resp't Br. at 24-25. Accepting or denying the truth of this statement is, spot on, what the *St. Cyr* Court sought to avoid. 553 U.S. at 301 n.13 ("The fact that this Court would be required to answer the difficult question of what the Suspension Clause protects is in and of itself a reason to avoid answering the constitutional questions that would be raised by concluding that review was barred entirely."). We follow the Supreme Court's lead and thus forgo construing the Suspension Clause. *St. Cyr*, 533 U.S. at 300-01; *see also Wang*, 320 F.3d at 141 (noting desire to "avoid serious constitutional concerns").

We note also that the reasons to require a clear statement of Congressional intent are also present here. As discussed above, while Ogbudimkpa initially sought review of the final order of removal issued in his case, that petition was dismissed by our Court for lack of jurisdiction. If we were to conclude here that there is no *habeas* jurisdiction, no Article III court will review Ogbudimkpa's CAT claims.

We are reluctant to construe the statute to bar any type of judicial review without a clear statement from Congress indicating its intent to do so. *Accord St. Cyr*, 533 U.S. at 299. In addition, the construction that the Government proposes would eliminate *habeas* jurisdiction, something that also requires a clear statement of intent on the part of Congress. *Id.* at 298.

With these considerations in mind, we turn to the language of FARRA. A side-by-side comparison (with emphasis added) of the provision of IIRIRA at issue in *St. Cyr* that most closely mirrors the language of FARRA at issue here convinces us that FARRA does not foreclose *habeas* review.

| IIRIRA § 306(a) | FARRA § 2242(d)4 |
| --- | --- |
| "Notwithstanding any other provision of law, no court shall have **jurisdiction to review** any final order of removal against an alien who is removable by reason of having committed" certain enumerated criminal offenses. | "Notwithstanding any other provision of law, . . . nothing in this section shall be construed as providing any court **jurisdiction to consider or review** claims under [CAT] or this section . . . except as part of the review of a final order of removal pursuant to section 242 of the [INA]." |

With strong indication from the Supreme Court that nothing will suffice but the most explicit statement that *habeas* jurisdiction under 28 U.S.C. § 2241 is repealed, and because § 2242(d) of FARRA does not mention *habeas corpus* or 28 U.S.C. § 2241, we conclude, by analogy to *St. Cyr*, that FARRA does not foreclose a district court from exercising *habeas* jurisdiction over claims alleging violations of CAT.

## 2. *Arguments to Distinguish St. Cyr*

### a. Differences between FARRA and IIRIRA

The Government reasons that a different result from *St. Cyr* should occur in this case, carefully parsing the differences between the statutory language of FARRA and IIRIRA in search of support. It notes that FARRA does not just forbid "review" but also "expressly prohibits any interpretation of its terms that would confer jurisdiction either to 'consider' or to 'review'" a CAT claim.

*St. Cyr* rejects this line of argument. That the wording of FARRA is minimally different from IIRIRA is immaterial in the absence of a clear statement by Congress of its intent explicitly to foreclose *habeas* jurisdiction. Even assuming that FARRA's language is broader than IIRIRA's language at best does nothing more than create a slight ambiguity as to Congress' intent. But statutory "ambiguity does not help the INS" and "[o]nly the clearest statement of congressional intent will support the INS' position." *St. Cyr*, 533 U.S. at 312 n.35. Indeed, in *St. Cyr* the Court concluded that *habeas* relief under 28 U.S.C. § 2241 remained available notwithstanding the fact that one provision under review, entitled "Elimination of Custody Review by Habeas Corpus," repealed the INA provision authorizing *habeas* relief, INA § 106(a)(10).[21] The Court reasoned that this provision could not "eliminate what it did not originally grant — namely, habeas jurisdiction pursuant to 28 U.S.C. § 2241." *St. Cyr*, 533 U.S. at 311. In other words, excising a specific INA provision theretofore authorizing *habeas* review did not affect the general *habeas* authority granted by § 2241. If excising a provision authorizing *habeas* review is not sufficiently explicit an expression of Congressional intent to foreclose *habeas* jurisdiction, then the use of the word "consider" in addition to the word "review" cannot be deemed sufficiently explicit.

---

21. As already noted, *see supra* note 14, *St. Cyr* considered jurisdictional provisions of both IIRIRA and AEDPA. The caption quoted is from AEDPA § 401(3).

### b. Non-Self-Executing Treaties

The Government argues that because *St. Cyr* did not involve a non-self-executing treaty, the Supreme Court's reasoning does not apply to FARRA. Further, because FARRA involves such a treaty, there is no *habeas* jurisdiction unless Congress grants it. With a self-executing treaty, "no domestic legislation is required to give [it] the force of law in the United States." *Trans World Airlines, Inc. v. Franklin Mint Corp.*, 466 U.S. 243, 252 (1984). Conversely, a non-self-executing treaty is one that "must be implemented by legislation before it gives rise to a private cause of action." *Mannington Mills, Inc. v. Congoleum Corp.*, 595 F.2d 1287, 1298 (3d Cir. 1979) (citing *Head Money Cases*, 112 U.S. 580, 589-90 (1884)). As noted above, in ratifying CAT the Senate gave its "advice and consent subject to [the declaration by the United States] that the provisions of Articles 1 through 16 of [CAT] are not self-executing." 136 Cong. Rec. 36,198.[22]

---

22. Ogbudimkpa argues that (a) CAT should be deemed a self-executing treaty, (b) the District Court erred in relying solely on the Senate's declaration that CAT was non-self-executing, and (c) the Senate's declaration that the treaty was non-self-executing was unconstitutional. Because in enacting FARRA Congress implemented CAT, we need not consider whether CAT is self-executing. *See Cornejo-Barreto*, 218 F.3d at 1011 n.6 ("Because Congress passed legislation implementing Article 3 of [CAT], we need not reach the issue of whether that provision of the treaty is self-executing.").

We similarly find it unnecessary to consider the proposition that *habeas corpus* claims may be based on violations of treaties regardless whether the treaty is non-self-executing or self-executing. While this argument is well-thought-out, it has been rejected by a number of our sister Circuits in a rather cursory manner.

The argument starts from the basic premise that CAT, as a ratified treaty, is the law of the United States, with or without implementing legislation. *See* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land."). Courts have jurisdiction under 28 U.S.C. § 1331 to consider cases arising out of treaties. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). While the exact meaning of the terms "self-executing" and "non-self-executing" is the subject of much scholarly

Premised on its conclusion that CAT is not self-executing, the Government states that an alien has only those CAT

---

debate, *see, e.g.,* Carlos Manuel Vazquez, *The Four Doctrines of Self-Executing Treaties,* 89 Am. J. Int'l L. 695 (1995), the law of this Circuit, as already noted, defines a non-self-executing treaty as one that "must be implemented by legislation before it gives rise to a private cause of action." *Mannington Mills,* 595 F.2d at 1298; *see also Tel-Oren v. Libyan Arab Republic,* 726 F.2d 774, 808 (D.C. Cir. 1984) (Bork, J., concurring) (quoting *Mannington Mills,* 595 F.2d at 1298); *but see* Restatement (Third) on Foreign Relations Law, § 111 cmt h ("Whether a treaty is self-executing is a question distinct from whether the treaty creates private rights or remedies."). Ratification purporting to cabin a treaty as non-self-executing nonetheless provides jurisdiction to the United States courts to hear cases premised on its violation (one example might be where CAT is interposed as a defense to removal), but does not provide a cause of action. *Dreyfus v. Von Finck,* 534 F.2d 24, 28, 30 (2d Cir. 1976) (dismissing claim based on non-self-executing treaty violation because while 28 U.S.C. § 1331 provided *jurisdiction* for the court to consider a claim under a treaty, it did not provide a *cause of action*).

*Habeas* relief is available for violations of a treaty. *See* 28 U.S.C. § 2241(c)(3) (providing that writs of *habeas corpus* may be granted to a prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States"); *see also Mali v. Keeper of the Common Jail,* 120 U.S. 1 (1887) (considering *habeas* petition premised on treaty violation). Thus, the general *habeas* statute, 28 U.S.C. § 2241, provides a cause of action that 28 U.S.C. § 1331 does not. As a result, the argument continues, a treaty that is ratified but not self-executing need not be implemented in order for a party to have a *habeas* cause of action under that treaty. *But see Wang,* 320 F.3d at 140 ("Unless a treaty is self-executing, however, it does not, in and of itself, create individual rights that can give rise to habeas relief."); *accord Bannerman v. Snyder,* 325 F.3d 722, 724 (6th Cir. 2003) (concluding that "the reference to 'treaties of the United States' in § 2241 cannot be construed as an implementation of non-self-executing provisions of treaties so as to render them judicially enforceable under § 2241"); *Al Odah v. United States,* 321 F.3d 1134, 1146 (D.C. Cir. 2003) (rejecting *habeas* claim because "[t]reaties do not generally create rights privately enforceable in the courts. Without authorizing legislation, individuals may sue for treaty violations only if the treaty is self-executing.") (Randolph, J., concurring); *Wesson v. U.S. Penitentiary Beaumont,* 305 F.3d 343, 348 (5th Cir. 2002) ("Wesson's claim of a violation of the International Covenant on Civil and Political Rights fails because the treaty is not self-executing and Congress has not enacted implementing legislation. Thus,

claims that Congress has expressly provided. In essence, the Government contends, the question that the Supreme Court asked in *St. Cyr* — is there evidence that Congress intended to *foreclose* the availability of *habeas* review — is turned around in the context of a non-self-executing treaty and becomes, instead, whether there is evidence that Congress intended to *provide for* the availability of *habeas* review. Were this analysis correct, *habeas* review would not be available for claims based on violations of CAT because, the Government points out, there is no explicit evidence that Congress intended to provide for that review.

We agree with the First and Second Circuits that the proper starting point is the question whether FARRA *deprives* the District Court of *habeas* jurisdiction, not whether it *grants* it. *Habeas* relief is available for an individual who claims his or her continued detention violates a statute or a treaty. 28 U.S.C. § 2241(c)(3). CAT has been implemented by FARRA and its accompanying regulations. FARRA makes it federal law that no one shall be removed "to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." FARRA, § 2242(a). It follows that those individuals whose detention violates FARRA may challenge their detention under 28 U.S.C. § 2241, just as with any other detentions that violate federal law. *See Wang*, 320 F.3d at 141 n.16 ("Once Congress created rights under CAT by enacting FARRA, § 2241 necessarily became

---

habeas relief is not available for such a violation."); *United States v. Warden, FMC Rochester*, 286 F.3d 1059, 1063 (8th Cir. 2002) (rejecting § 2241 claim alleging violations of treaty on ground that it "does not bind federal courts because the treaty is not self-executing and Congress has yet to enact implementing legislation").

Thus, while we sidestep this thicket (whether a treaty is self-executing or non-self-executing treaty has been dubbed "the most confounding" distinction in the law of treaties, Vazquez, *The Four Doctrines of Self-Executing Treaties*, 89 Am. J. Int'l L. at 695 (quoting *United States v. Postal*, 589 F.2d 862, 876 (5th Cir. 1979))), we note the interesting issues the argument engenders, particularly those with respect to the availability of *habeas* relief under a non-self-executing treaty absent implementing legislation.

a proper avenue of relief for individuals in custody in violation of FARRA and its implementing regulations."); *Saint Fort*, 329 F.3d at 202 ("Saint Fort's claims do not rest solely on a treaty that is not self-executing, they rest on the CAT through the FARRA and the regulations, and on a claim of violation of constitutional rights.").[23] Thus, whether CAT is or is not self-executing is irrelevant.

### c. Historical Practice

In support of its argument that Congress must affirmatively grant *habeas* jurisdiction, the Government notes that there is no history of district courts reviewing CAT claims in the form of *habeas corpus* petitions. We are unpersuaded that this is relevant. In the words of the Second Circuit (which also dismissed this argument), "it makes no difference whether the type of claim allegedly being excluded from § 2241 is long-standing or newly created." *Wang*, 320 F.3d at 141 n.16. Once Congress created rights under CAT by enacting FARRA, § 2241 "became a proper avenue of relief for individuals in custody in violation of FARRA and its implementing regulations." *Id.*

In a similar vein, the Government contends that the lack of history of *habeas* review of CAT claims distinguishes this case from *St. Cyr* because there was a longstanding history of *habeas* review of deportation and exclusion orders prior

---

23. The Government argues that because FARRA provides "an affirmative, but limited grant of jurisdiction," it must also affirmatively grant *habeas* jurisdiction. Resp. Br. at 24. For this argument to be correct, FARRA must be different from other statutes with a limited grant of jurisdiction. For instance, every federal criminal law provides an affirmative, though limited, grant of jurisdiction (because the federal Government has no general police power) and yet nearly all federal criminal laws do not explicitly provide for *habeas* jurisdiction. If the Government's theory of *habeas* jurisdiction is correct, every time Congress enacted a criminal law, a district court would lack jurisdiction to hear *habeas corpus* claims based on violations of that law unless that criminal statute affirmatively granted *habeas* jurisdiction. *Cf.* Reply Br. at 13 ("The Government's position would . . . require Congress to go through the pointless exercise of attaching (redundant) jurisdiction grants to each and every point of legislation implementing a treaty's provisions.").

to IIRIRA, whereas there is no such history of CAT claims prior to FARRA. But the *St. Cyr* Court's analysis of the historical availability of the writ of *habeas corpus* did not focus narrowly, as the Government would have us do, on whether there was a history of *habeas* review of the exact claims at issue in that case.

Using the broad lens of the *St. Cyr* Court, we conclude that the question is whether the *general nature* of the claims at issue were historically reviewable on a writ of *habeas corpus*. *Habeas corpus* writs were traditionally issued "to command the discharge of seamen who had a statutory exemption from impressment into the British Navy, to emancipate slaves, and to obtain the freedom of apprentices and asylum inmates." *St. Cyr*, 533 U.S. at 302. Here, as in *St. Cyr*, the general nature of the claim is that of a challenge to the validity of executive detentions, and we are persuaded by *St. Cyr*'s analysis demonstrating that these challenges invoke the writ's protections in their purest form. *Id.* at 301 ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention"); *id.* at 303-04 (noting "the historical use of habeas corpus to remedy unlawful Executive action" and "to redress the improper exercise of official discretion"); *id.* at 305 (arguing that "to conclude that the writ is no longer available in this context would represent a departure from historical practice in immigration law. The writ of habeas corpus has always been available to review the legality of Executive detention.").

Even if we were to narrow the lens, disallowing *habeas* relief would still be a departure from historical practice. Not only did the writ traditionally issue as a means to review the legality of Executive detention of citizens, it also issued as a means of reviewing the legality of Executive detention of aliens. *St. Cyr*, 533 U.S. at 305-06. And it traditionally issued as a means of reviewing the legality of the detention of aliens in the face of alleged treaty violations. *Brief Amici Curiae of Legal Historians Listed Herein in Support of Respondents: INS v. St. Cyr, 533 U.S. 289 (2001)*, 16 Geo. Immigr. L.J. 465, 482 (2001) (describing cases in which deserting alien sailors brought *habeas corpus* petitions

based on violations of treaties or federal laws); *see also Mali*, 120 U.S. at 1 (considering *habeas corpus* petition brought on behalf of alien sailor alleging violations of consular agreement between the United States and Belgium). Hence the conclusion that *habeas* review was not available for CAT claims would, as in *St. Cyr*, represent "a departure from historical practice," a departure we decline to follow. *St. Cyr*, 533 U.S. at 305.

We therefore hold that district courts may exercise *habeas* jurisdiction over petitions alleging violations of CAT or FARRA and that FARRA does not speak with sufficient clarity to deprive the district courts of that jurisdiction.[24]

---

24. We hold that a district court has jurisdiction to consider *habeas corpus* petitions that allege violations of CAT. If CAT is a non-self-executing treaty (and individuals do not have a right to bring *habeas* claims based on violations of non-self-executing treaties, as discussed *supra* note 22), then, strictly speaking, the District Court may have jurisdiction only to consider claims alleging FARRA violations. The Restatement (Third) of Foreign Relations Law, § 111 cmt h (1987), suggests that "it is the implementing legislation, rather than the agreement itself, that is given effect as law in the United States. That is true even when a non-self-executing agreement is 'enacted' by, or incorporated in, implementing legislation." Assuming that CAT is non-self-executing, then so-called CAT claims may be, in fact, FARRA claims.

But because the language of FARRA is virtually identical to the language of Article 3 of CAT, the distinction is one without a difference. It would be absurdly formalistic to conclude that there is no *habeas* jurisdiction if a petitioner invokes Article 3 of CAT, but that there is *habeas* jurisdiction if a petitioner invokes § 2242(a) of FARRA, when the language of the two provisions are substantively the same. *Compare* Article 3, CAT ("No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.") *with* FARRA § 2242(a) ("It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture.").

The "bottom line" — if CAT is indeed non-self-executing, then FARRA implements CAT and provides a cause of action for violations of CAT, but it does not make CAT self-executing. The technical result — an individual has a claim under FARRA for a violation of CAT, but not under CAT itself. But because the distinction between FARRA and Article 3 of CAT is inconsequential, the continued colloquial reference to CAT rather than FARRA is likewise inconsequential and thus we relegate this discussion to a footnote.

### C. Scope of Review

The Government further asserts that, even if we were to conclude (as we have done) that district courts have jurisdiction under 28 U.S.C. § 2241 to review CAT or FARRA claims, the District Court has no jurisdiction over Ogbudimkpa's *habeas corpus* claims because he has not sought review on a legal or constitutional claim, but rather of a factual issue. We disagree. Ogbudimkpa does not dispute the factual findings of the IJ. Rather, he argues that the IJ wrongly applied the standard for relief set forth in FARRA and its implementing regulations to the facts of his case. *Habeas* relief is traditionally available to correct "errors of law, including the erroneous *application* or interpretation of statutes." *St. Cyr*, 533 U.S. at 302 (emphasis added). A district court's *habeas* jurisdiction encompasses review of the BIA's *application* of legal principles to undisputed facts. *Wang*, 320 F.3d at 143 ("Wang's argument on appeal challenging the BIA's application of the particular facts in this case to the relevant law falls within the permissible scope of review."); *see also Saint Fort*, 329 F.3d at 203 (noting the Second Circuit's conclusion in *Wang* while declining to reach issue because the petitioner's claim was constitutional in nature). Because Ogbudimkpa alleges misapplication of a legal principle to undisputed facts of record, this case falls within the scope of *habeas* jurisdiction granted to the District Court by 28 U.S.C. § 2241.

## III. Conclusion

District courts have jurisdiction to consider claims alleging violations of CAT raised in *habeas corpus* petitions. Congress implemented CAT by passing FARRA. FARRA's jurisdictional provisions do not refer to *habeas corpus* or 28 U.S.C. § 2241, and thus do not speak with sufficient precision to divest district courts of that *habeas* jurisdiction. Because the scope of *habeas* jurisdiction extends to claims concerning the correct interpretation or application of a statute, the District Court has jurisdiction to consider Ogbudimkpa's claim that the BIA misinterpreted FARRA (and the regulations implementing FARRA) in concluding that the facts in this case do not satisfy the standard for relief under CAT. Accordingly, we

reverse the District Court's dismissal for lack of subject matter jurisdiction and remand for it to consider the merits of Ogbudimkpa's *habeas corpus* petition.

A True Copy:
   Teste:

       *Clerk of the United States Court of Appeals*
          *for the Third Circuit*