967 F.2d 965
 GOLDSTAR (PANAMA) S.A.; Modas Kosmas, S.A.; Estacion
Paitilla, S.A.; Confecciones Boston, S.A.; Mirtex
Industries (Thailand) Ltd.; Luis Varcacia, S.A.; Amaily
Corporation, Incorporated; El Mundo De Las Telas, S.A. (Los
Textileros, S.A.); Muebleria Nuevo Arte Catolico, S.A.;
Importadora Y Exportadora Mirna, S.A.; Compania Panamena De
Maquinarias, S.A. (Copama); Pollos Central, S.A.; El
Agricultor De Panama, S.A.; Pollos Calidonia; Empolladora
Panama, S.A.; Empacadora Avicola, S.A.; Rimex
International, S.A.; Avon De Panama, S.A.; Embutidos Y
Conservas De Pollo, S.A.; Comercial Madedera, S.A.; Pollos
De Colon, S.A.; Melo Y Compania De Colon, S.A.;
Multisistemas, S.A.; Compania De Finanzas Y Servicios,
S.A.; Industria Nacional De Madera, S.A.; Fincas
Industriales Melo, S.A.; Ferreteria Y Jardinera, S.A.;
Melo Y Compania De Rio Abajo, S.A.; Melo Y Compania, S.A.;
Mister Pollo, S.A.; PIO-PIO, S.A.; Altos Vistamares, S.A.
(Altos De Cerro Azul); Motores Vista Hermosa, S.A.; Fonda
Antioquena; Comercializadora Internacional, S.A.; Delzai,
S.A.; Compania Atlas, S.A.; Datacom, S.A.; Calzados
Infantiles, S.A.; Supermercado Sogo, S.A.; Farmacia El
Dorado Y Farmacia Boulevard El Dorado; La Casa Del Zinc,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
Lindo & Maduro, S.A.; CIA. Panamena De Aceites, S.A.;
Epsilon, S.A.; Distribuidora El Chorro, S.A.;
Distribuidora Gatun, S.A.; Administradora De Industrias Y
Comercio, S.A.; Distribuidora Las Mendozas, S.A.;
Distribuidora Premier, S.A.; Torneria Especializada, S.A.;
Terminales Panama, S.A.; Ricardo Perez, S.A.; Dynamos
Corporation, S.A.; Corporation Financiera De Equipo, S.A.;
Toyota Rent a Car, S.A.; Panama Bond Corporation, S.A.;
Hot Shop, S.A.; Diacor, S.A.; Cemali, S.A.; Cala, S.A.;
Espanola, S.A.; Amelia, S.A.; Medic, S.A.; Cesar Arrocha
Graell & Co., S.A.; Productos Superiores, S.A.; Abernathy,
S.A.; Clamps, S.A.; Supro Mundial, S.A.; Vulcapan, S.A.;
Cencal, S.A.; Super Colmar, S.A.; Super Mercado Monte
Oscuro, S.A.; Super Deposito, S.A.; Meso, S.A.; Super
Dorado, S.A.; Importadora Ricamar, S.A.; Panaderia Y
Dulceria Ba Sabrosita 99, S.A.; Orosi, S.A.; Granos Del
Nilo, S.A.; Super Centro Juan Diaz, S.A.; Parmacia Mejor
Salud, S.A.; Parmacia Mejor Salud # 1, S.A.; Parmacia
Mejor Salud # 3, S.A.; H. Tzanetatos, Inc.; Proveedora
Universal, S.A.; Inmobiliaria La Rivera, S.A.; Lavery
Panama, S.A.; Blue Ribbon Products, S.A.; Inmobiliaria
Argo, S.A.; Rodelag, S.A.; Rodelag Lacal, S.A.; Rodelag
Otros, S.A.; Oficina Universal, S.A.; Llantas, S.A.;
Rodelag David, S.A.; Gerencia Y Administracion De Computo,
S.A.; Gerencia Y Administracion; Centro De Distribucion,
S.A.; Servicios Agroquimicos, S.A.; Central Agricola,
S.A., Amici Curiae.
 No. 91-2229.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 4, 1992.
Decided June 16, 1992.
 
 Douglas B. McFadden (James A. Kline, on the brief), McFadden, Evans & Sill, Washington, D.C., argued, for plaintiffs-appellants.
 John S. Koppel, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen., Douglas Letter, Civ. Div., U.S. Dept. of Justice, Washington, D.C., Richard Cullen, U.S. Atty., Theresa C. Buchanan, Asst. U.S. Atty., Alexandria, Va., Lt. Col. Philip Lynch, Torts Branch, Dept. of the Army, Arlington, Va., on the brief), for defendant-appellee.
 Allan I. Mendelsohn, Marvin L. Szymkowicz, Law Firm of Allan I. Mendelsohn, Washington, D.C., for amici curiae.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Plaintiffs-appellants, a group of Panamanian businesses (collectively, "Goldstar"), appeal from the district court's dismissal of their action for lack of subject matter jurisdiction. Goldstar claims that the United States Government is liable for damage to the property of various Panamanian businesses that occurred as a result of looting and rioting in the wake of the United States' invasion of Panama. Finding that the United States has not waived its sovereign immunity against law suits of this nature, we affirm the dismissal of this case.
 
 I.
 
 2
 Because the court below dismissed this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction, we accept the facts, as alleged in Goldstar's amended complaint, as true. See, e.g., Finlator v. Powers, 902 F.2d 1158, 1160 (4th Cir.1990). These facts are as follows.
 
 
 3
 The armed forces of the United States invaded Panamanian territory on December 20, 1989, and "occupied, pacified, and controlled" an area of Panama City, Panama, containing the businesses owned by the plaintiffs. Amended Complaint at 6. The occupation continued until approximately January 10, 1990. During the period of occupation, the Panamanian Defense Force (the "PDF"), which also served as Panama's police force, was effectively eliminated. The United States was aware that the PDF was the sole source of police protection within Panama.
 
 
 4
 Units of the United States armed forces attempted to provide police protection to civilians within Panama City. However, the United States Government had, allegedly, negligently failed to provide adequate personnel, equipment, and orders to protect the residents and businesses of Panama City. Because of the inadequacy of the United States' efforts, uncontrolled mobs were allowed to loot the commercial establishments of the plaintiffs and other Panamanian businesses.
 
 
 5
 Goldstar commenced the present action in United States District Court for the Eastern District of Virginia on May 23, 1991, alleging violations of the Hague Convention which, Goldstar argued, imposed a duty on the United States to provide protection for the residents of an occupied territory. On August 2, 1991, the United States moved to dismiss on a number of jurisdictional grounds. On September 6, 1991, the district court dismissed the case, holding that the action fell within certain exceptions to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. 1346(b), and therefore, that the court was without subject matter jurisdiction to hear the case. Goldstar filed a timely appeal.
 
 II.
 
 6
 As a general proposition, the United States is subject to suit only to the extent that it has explicitly waived its sovereign immunity. See Block v. North Dakota, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983). The subject matter jurisdiction of the federal courts is defined by any conditions the United States attaches to its waiver of immunity. Lehman v. Nakshian, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981).
 
 
 7
 Goldstar asserts two theories upon which the United States could be found to have waived its immunity for suits such as the present case. We will address each theory in turn.
 
 A.
 
 8
 Goldstar's first contention is that jurisdiction is proper under the Alien Tort Statute, 28 U.S.C. § 1350. That provision states: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Id. While this statute would facially appear to grant jurisdiction for Goldstar's action, the Alien Tort Statute has been interpreted as a jurisdictional statute only--it has not been held to imply any waiver of sovereign immunity. Sanchez-Espinoza v. Reagan, 770 F.2d 202, 207 (D.C.Cir.1985); Canadian Transp. Co. v. United States, 663 F.2d 1081, 1092 (D.C.Cir.1980). Thus, any party asserting jurisdiction under the Alien Tort Statute must establish, independent of that statute, that the United States has consented to suit.
 
 
 9
 Goldstar contends that the United States has waived sovereign immunity under the provisions of the Hague Convention, a multilateral international treaty to which the United States is a signatory. The relevant provision of that document states, "A belligerent party which violates the provisions of the said Regulations shall, if the case demands, be liable to pay compensation. It shall be responsible for all acts committed by persons forming part of its armed forces." Hague Convention Respecting the Law and Customs of War on Land, 1907, art. 3, 36 Stat. 2277, 2290. The "Regulations," referenced by the treaty, contain a provision relating to the circumstance in which one nation occupies the territory of another:
 
 
 10
 The authority of the legitimate power having in fact passed into the hands of the occupant, the latter shall take all the measures in his power to restore, and ensure, as far as possible, public order and safety, while respecting, unless absolutely prevented, the laws in force in the country.
 
 
 11
 Hague Convention, Annexed Regulations, art. 43, 36 Stat. at 2306. Under Goldstar's theory, the United States failed to comply with the duty imposed on occupying nations by Article 43 of the Hague Convention.* Accordingly, Goldstar contends that the United States is liable for compensation under Article 3 of the Convention, and that Article 3 must be interpreted as a self-executing waiver of sovereign immunity with regard to such claims.
 
 
 12
 International treaties are not presumed to create rights that are privately enforceable. See Head Money Cases, 112 U.S. 580, 598-99, 5 S.Ct. 247, 253-54, 28 L.Ed. 798 (1884); Foster v. Neilson, 27 U.S. (2 Pet.) 253, 314, 7 L.Ed. 415 (1829). Courts will only find a treaty to be self-executing if the document, as a whole, evidences an intent to provide a private right of action. United States v. Thompson, 928 F.2d 1060, 1066 (11th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 270, 116 L.Ed.2d 222 (1991); Diggs v. Richardson, 555 F.2d 848, 851 (D.C.Cir.1976). The Hague Convention does not explicitly provide for a privately enforceable cause of action. Moreover, we find that a reasonable reading of the treaty as a whole does not lead to the conclusion that the signatories intended to provide such a right.
 
 
 13
 Significantly, the United States Supreme Court has recently construed a provision of the Geneva Convention similar to the presently contested Hague Convention language. The Geneva Convention provides that an illegally boarded merchant ship "shall be compensated for any loss or damage that may have been sustained." Geneva Convention of the High Seas, Apr. 29, 1958, art. 22(3), 13 U.S.T. 2312, 2319. Interpreting this language, the Supreme Court found that the "conventions ... only set forth substantive rules of conduct.... They do not create private rights of action...." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 442, 109 S.Ct. 683, 692, 102 L.Ed.2d 818 (1989). We can discern no reason why the Hague Convention language, at issue in the present case, should be construed any differently.
 
 
 14
 Furthermore, Article 1 of the Hague Convention states, "[t]he Contracting Powers shall issue instructions to their armed land forces which shall be in conformity with the Regulations...." Hague Convention, art. 1, 36 Stat. at 2290. This language must be taken as further evidence that the Hague Convention is not self-executing, and that, instead, the signatories contemplated that individual nations would take subsequent executory actions to discharge the obligations of the treaty.
 
 
 15
 In sum, we hold that the Hague Convention is not self-executing and, therefore, does not, by itself, create a private right of action for its breach. As a result, we find that neither the Hague Convention nor, derivatively, the Alien Tort Statute, constitutes a waiver of sovereign immunity for the type of action advanced by Goldstar. Accordingly, Goldstar cannot establish subject matter jurisdiction under the terms of the Alien Tort Statute.
 
 B.
 
 16
 Alternatively, Goldstar contends that it can prove proper jurisdiction, including a waiver of sovereign immunity, under the terms of the FTCA. According to that statute:
 
 
 17
 Subject to the provisions of chapter 171 of this title, the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
 
 
 18
 28 U.S.C. § 1346(b). Further, section 2674 provides that the United States will be liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Acting in concert, these provisions provide an explicit grant of jurisdiction and waiver of sovereign immunity for tort claims against the United States. However, as indicated in section 1346(b), the scope of the waiver is limited by certain enumerated exceptions, codified at Title 28, chapter 171, of the United States Code.
 
 
 19
 Before analyzing the relevance of these exceptions to the present case, it is necessary to make a preliminary point about the applicability of the FTCA. While the FTCA waives sovereign immunity for actions alleging torts by employees of the Government, it does not create novel causes of action. Thus, the mere allegation of a breach of duty under Federal law does not, by itself, state a valid tort claim against the Government. See, e.g., Art Metal-U.S.A., Inc. v. United States, 753 F.2d 1151, 1157-58 (D.C.Cir.1985) (collecting cases).
 
 
 20
 Claims can, of course, be brought if federal law explicitly authorizes a cause of action. In that case, resort to the FTCA is unnecessary. The FTCA only serves to convey jurisdiction when the alleged breach of duty is tortious under state law, or when the Government has breached a duty under federal law that is analogous to a duty of care recognized by state law. See 28 U.S.C. § 2674; Rayonier, Inc. v. United States, 352 U.S. 315, 318, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957) (United States would be liable for breach of federal law standard if state law "would impose liability on private persons or corporations under similar circumstances"); Art Metal, 753 F.2d at 1158 ("The pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law.").
 
 
 21
 In the present case, Goldstar alleges that the United States breached a duty arising under the Hague Convention, which, as an international treaty, is equivalent to federal law. As discussed above, the Hague Convention cannot be considered self-executing and, therefore, does not independently provide a cause of action. Consequently, in order to prevail on a claim predicated upon the United States' Hague Convention duty, Goldstar must show that the duty breached by the United States was analogous to a duty imposed by the law of the forum state--in this case, Virginia. Clearly, there is no tort under Virginia law for failing to protect the property of another from the illegal actions of third parties. Thus, to the extent that Goldstar argues that the United States had a mandatory duty, imposed by the Hague Convention, to provide police protection to Panama, Goldstar's claim is not cognizable under the FTCA, because there is no such analogous duty under Virginia state law.
 
 
 22
 Goldstar circumvents this problem by alleging that even if there was no mandatory duty under the Hague Convention to provide police protection, the United States, by voluntarily undertaking to provide such protection, created a duty to exercise due care in providing that service. See Vandergrift v. United States, 500 F.Supp. 229, 233 (E.D.Va.1978) ("When an agency of the United States undertakes a task, it must perform the task with due care. The Virginia law is the same." (citations omitted)). Goldstar contends that this voluntarily assumed duty provides an actionable cause under the FTCA. However, this argument, while saving Goldstar's complaint under the threshold requirements of the FTCA, simultaneously dooms the action under the FTCA's enumerated exceptions.
 
 
 23
 Under these exceptions, Congress has barred from the scope of the FTCA "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). By arguing, as it must, that the provision of police protection was voluntarily assumed by the United States Government, and not mandatorily imposed by the Hague Convention, Goldstar has placed this case squarely within this discretionary function exception to the FTCA.
 
 
 24
 The Supreme Court has held that the discretionary function exception applies when 1) the relevant conduct involves an element of judgment or choice on the part of the Government actor and 2) the conduct involves considerations of public policy. Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531 (1988); see also Piechowicz v. United States, 885 F.2d 1207, 1211-12 (4th Cir.1989). In this case, there can be no doubt that decisions regarding the logistics of the military operations in Panama, including proper allocation of personnel, were matters of delicate public policy. Thus, the critical inquiry on this question concerns whether the decision-makers in the United States Government, in determining the proper level of police protection to provide to the Panamanian civilians, faced decisions involving elements of judgment or choice.
 
 
 25
 If Goldstar's claim was based on the contention that a certain quantum of protection was mandated by the express terms of the Hague Convention, then, at least arguably, Goldstar could advance the proposition that the provision of that protection was not a discretionary matter. According to the Berkovitz Court, "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event the employee has no rightful option but to adhere to the directive." 486 U.S. at 536, 108 S.Ct. at 1958. Because Goldstar cannot rely on the Hague Convention to establish an actionable duty of care, however, there is no "directive" to which the United States policy-makers can be bound. In the absence of an expressly articulated standard to limit the Government's discretion in this matter, it is impossible to find that the Government's decisions were anything but purely discretionary. See Monarch Ins. Co. v. District of Columbia, 353 F.Supp. 1249, 1258 (D.D.C.1973) (discretionary function exception bars claims challenging adequacy of police forces assigned in connection with looting episodes following the assassination of Dr. Martin Luther King), aff'd, 497 F.2d 684 (D.C.Cir.), cert. denied, 419 U.S. 1021, 95 S.Ct. 497, 42 L.Ed.2d 295 (1974); Smith v. United States, 330 F.Supp. 867, 869 (E.D.Mich.1971) (discretionary function exception applies because "[t]he means and method of restoring order in a city faced with anarchy and breakdown of civilian authority are delegated to the Executive Branch of the Government, not the judiciary").
 
 
 26
 Accordingly, we find, as did the district court, that the discretionary function exception, 28 U.S.C. § 2680(a), bars application of the FTCA. Accord Industria Panificadora, S.A. v. United States, 957 F.2d 886, 887 (D.C.Cir.1992) (affirming dismissal of similar claims).
 
 III.
 
 27
 Having found that neither the Alien Tort Statute nor the FTCA provides the requisite waiver of sovereign immunity by the United States Government to allow Goldstar's action to proceed, we decline to address the Government's alternative argument that the action presents a non-justiciable political question. Instead, we hold that the district court correctly dismissed the case for lack of subject matter jurisdiction. The order of the district court is hereby
 
 
 28
 AFFIRMED.
 
 
 
 *
 The parties dispute whether or not Panama was "occupied" by the United States as contemplated by the Hague Convention. Because we believe that the Hague Convention cannot be construed as a self-executing waiver of sovereign immunity, and therefore that it cannot avail Goldstar in any event, we will assume, for purposes of this discussion, that the United States was an "occupying power."