**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 04-7731**

─────────────

LIOR ATUAR, a/k/a Itamar Sinai, a/k/a Daniel
Rozen,

                                    Petitioner - Appellant,

        versus

UNITED STATES OF AMERICA,

                                    Respondent - Appellee,

        and

MARTY     ANDERSON,     Federal     Correctional
Institution, Beckley; JAMES D. DAWSON,

                                    Respondents.


─────────────

Appeal from the United States District Court for the Southern
District of West Virginia, at Beckley.   David A. Faber, Chief
District Judge. (CA-04-17-5)

─────────────

Argued:  March 16, 2005          Decided:  November 23, 2005

─────────────

Before TRAXLER and DUNCAN, Circuit Judges, and Frederick P. STAMP,
Jr., United States District Judge for the Northern District of West
Virginia, sitting by designation.

Affirmed by unpublished opinion. Judge Stamp announced the judgment of the court and wrote the opinion, in which Judge Traxler concurred except as to Part IV. Judge Traxler wrote a concurring opinion. Judge Duncan wrote an opinion concurring in Judge Traxler's opinion and concurring in the judgment.

**ARGUED:** Edward Henry Weis, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. Michael Lee Keller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Mary Lou Newberger, Federal Public Defender, Jonathan D. Byrne, Appellate Counsel, Charleston, West Virginia, for Appellant. Kasey Warner, United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

STAMP, District Judge:

Petitioner, Lior Atuar, a/k/a Itamar Sinai, a/k/a Daniel Rozen ("Atuar"), is wanted in the Republic of Turkey ("Turkey") on charges related to the distribution of heroin. Following the certification of his extraditability by United States Magistrate Judge R. Clarke VanDervort, petitioner Atuar filed a petition for writ of habeas corpus with the United States District Court for the Southern District of West Virginia at Beckley. Atuar's petition was denied, and he filed this appeal.

On appeal, Atuar contends that the certificate issued by the magistrate judge was improperly based upon the coerced confession of an alleged co-conspirator, Fahri Yasin ("Yasin"). Atuar argues that admission of coerced testimony in an extradition hearing violates the Due Process Clause of the United States Constitution, Article 14 of the United Nations Convention Against Human Torture ("CAT"), and the United States' extradition treaty with Turkey. Accordingly, Atuar maintains that his extradition is not founded on probable cause and requests that his case be remanded with instructions to grant habeas corpus relief.

For reasons stated below, we affirm the district court's finding of probable cause and deny the petitioner's habeas corpus petition.

3

I.

Atuar and co-defendants Hasan Erkus ("Erkus") and Yasin were charged in an indictment with selling, purchasing and acting as intermediate for the sale and purchase of heroin on May 3, 1991. J.A. 97.[1]

On May 11, 1991, a protocol was entered by Turkish police indicating that Atuar had been detained, but that he had escaped. J.A. 119.[2] On May 12, 1991, one day after Atuar had escaped, Yasin signed a written confession explaining the alleged conspiracy and detailing his efforts to help police catch Atuar before the escape. According to the May 12, 1991 confession, Yasin told the Smuggling Inquiry Bureau of Turkey on or after May 3, 1991, that Atuar intended to purchase the heroin and would return to Turkey on May

_____

[1]The indictment was issued on May 22, 1991 by the Office of Public Prosecutor against Atuar and co-defendants Yasin and Erkus, and it was addressed to the Chairman of the Penal Court in Antalya, Turkey. Atuar is identified in the indictment as "Itamar Siani." According to Turkish officials, Atuar went by the name "Daniel Rozen" for purposes of selling and buying heroin, and was originally taken into custody under the name "Itamar Siani," for which he had a false identification card. See J.A. 123-25. In the United States, Atuar went by the name "Daniel Rozen." See United States v. Rozen, 250 F.3d 747 (11th Cir. 2001). An "Additional Indictment" was issued June 4, 1991 for another co-defendant, Efrahim Dahan.

[2]A new warrant for Atuar's arrest was issued on May 16, 1991 and again on May 5, 1992. J.A. 121 and 123. The 1991 and 1992 warrants reflect Atuar's use of aliases. The first is issued for "Itamar Sinai" and the second for "Lior Atuar." Following these warrants, Turkish officials included in their extradition request a "Record of Identification Based on Photographs" showing that "Itamar Sinai" and "Lior Atuar" are, in fact, the same individual as stated above. J.A. 124-126.

4

10th or May 15th. J.A. 133. Under Yasin's direction, Atuar arrived at the Antalya Airport on May 10, 1991, was identified by Yasin as a co-conspirator, and was taken into custody by Turkish police.

Following Atuar's escape, Yasin appeared before Judge Hasan Yasar Oktay and stated, "I Fahri Yasin am for 15 days in the superintendence. By God! I am not well and healthy to give a statement." J.A. 127. According to Judge Oktay's "Examination Protocol," Yasin was informed that heroin was taken from the trunk, and he responded, "By God! I can say nothing." J.A. 127. Yasin was then given his signed statement from May 12, 1991, and he responded, "By God! Sir, I cannot give a statement." Id.

On May 16, 1991, Yasin gave another statement to the public prosecutor in charge of prosecuting the alleged heroin conspiracy. According to a record of the proceeding, a Turkish official explained to Yasin the offense with which he was being charged and asked if Yasin had a defense. Yasin responded, "I am not in a position to be examined." J.A. 134. Nevertheless, Yasin admitted to owning the car that had contained the heroin in question. However, Yasin did not admit to owning the heroin and only stated that he returned to Antalya to buy a house. He stated that he knew co-defendant Erkus because he had sold him furniture. Id.

On December 17, 1991, Yasin appeared before the Izmir State Security Court, and said, "My statements which have been given both

5

at the Procecutors [sic] office, at the Minor Court of Petty Offences [sic], both at the Antalya First Criminal Court, which gave a decision for incompetency, are right.  I accept all of them."  J.A. 135.  In the same testimony, Yasin identified Atuar and remarked, "I have been kept 15 days in torture.  I could not flee.  I wonder, how [Atuar] has fled."  J.A. 137.  Upon reading the various evidence, testimony, and documents supporting the government's case against Yasin, Yasin's attorney stated, "We do'nt [sic] accept the evidence which are [sic] against us."

On March 20, 1992, the Izmir State Security Court issued a decision regarding Yasin finding that Yasin was caught by police on May 3, 1991, when he attempted to retrieve his car which contained heroin in the trunk.  The State Security Court further found that Atuar contacted Yasin to retrieve the heroin and that Atuar was apprehended at the Antalya Airport.  The State Security Court held that Yasin's testimony was supported by statements from the Dedeman Hotel garage caretaker and a night manager at the hotel, by documents related to a rental car from Avis under Atuar's alias "Sinai Itamar," and by Yasin's relationship with Atuar.  J.A. 157. The State Security Court then granted Yasin's request for reduction in his sentence based on provisions in the Turkish Penal Code, and sentenced Yasin to serve five years in prison and payment of a fine.  J.A. 167.

On July 11, 2003, the United States filed a complaint on behalf of Turkey seeking the extradition of Atuar pursuant to 18

U.S.C. § 3184 and the Extradition and Mutual Assistance in Criminal Matters Treaty between the United States and the Republic of Turkey.[3] The complaint was based on a request by Turkey for Atuar's extradition. Turkey included with its request applicable articles of the Turkish Criminal Code, a laboratory report on the narcotics found in the trunk of Yasin's car, and records of indictments, hearings and court proceedings described above. Turkey also included copies of photographs of Atuar for identification purposes and submitted supplemental records concerning Atuar's identity, including the minutes from Yasin's testimony confirming Atuar's identity. J.A. 84-171 and 186-209.[4]

Turkey's extradition request was submitted to United States Magistrate Judge VanDervort, along with a declaration of the Attorney Adviser in the Office of the Legal Adviser for the Department of State charged with the extradition of Atuar.[5] On

---

[3]The Extradition and Mutual Assistance in Criminal Matters Treaty between the United States and the Republic of Turkey was entered into force on January 1, 1981. See Treaty on Extradition and Mutual Assistance in Criminal Matters, June 7, 1979, U.S.-Turk., 32 U.S.T. 3111 (hereinafter "Extradition Treaty").

[4]These documents were provided in the original Turkish as well as in English translation. The State Security Court Judge provided a cover letter summarizing the case for extraditing Atuar as detailed by the evidence submitted. See J.A. 84-87.

[5]The parties stipulated, and we agree, that the United States Magistrate Judge for the Southern District of West Virginia had jurisdiction over the extradition hearing because at the time the petition was formally filed against Atuar, he was incarcerated at the FCI-Beckley in Beaver, West Virginia. J.A. 235; see Pettit v. Walshe, 194 U.S. 205, 211 (1904) (extradition complaint properly brought where defendant resides). Atuar was sentenced to 70-months

7

November 19, 2003, United States Magistrate Judge VanDervort conducted a hearing to certify Atuar's extraditability pursuant to 18 U.S.C. § 3184.

In opposition to the United States' complaint for extradition, Atuar attached a November 13, 2003 affidavit from Yasin retracting his 1991 identification of Atuar as a co-conspirator. In the affidavit, Yasin stated that, following his arrest at the Antalya hotel, Turkish authorities had hung him by his hands, beaten him, deprived him of sleep and subjected him to electric shocks. Yasin stated that he did not provide authorities with the names of "the real person connected to the heroin," fearing harm to his family and himself from the actual perpetrators. Yasin stated that he identified Atuar because he felt Atuar, as a citizen of a foreign country, had a good chance of escaping Turkish authorities. Yasin concluded in his affidavit that Atuar had nothing to do with the heroin in the trunk of the car which served as the basis for charges against Atuar.

After considering Yasin's November 2003 retraction, the United States Magistrate Judge found that reasonable grounds existed to believe that Atuar committed the crimes with which he is charged in

---

incarceration with five years of supervised release after pleading guilty to attempting and conspiring to distribute cocaine in violation of 21 U.S.C. § 846. J.A. 19. Atuar had been indicted in the United States District Court for the Southern District of Florida under the assumed name "Daniel Rozen." Id. His sentence was affirmed by unpublished decision on February 16, 2001. See Rozen, 250 F.3d at 747.

Turkey, and therefore, issued a memorandum opinion certifying Atuar's extraditability. Specifically, the magistrate judge held that the Turkish government had satisfied the documentary and other procedural requirements of the Extradition Treaty with the United States, and that Turkey had sustained its burden of establishing probable cause to believe that Atuar committed the alleged violation of the Turkish Criminal Code. Finally, the magistrate judge issued a stay of the certification to enable Atuar to file a petition for writ of habeas corpus within thirty days of that court's memorandum opinion.

Atuar filed a timely habeas corpus petition with the United States District Court for the Southern District of West Virginia arguing that the magistrate judge had improperly relied on coerced testimony of co-defendant Yasin to find probable cause to certify Atuar's extradition. The district court reviewed the magistrate judge's opinion, accepted the magistrate judge's factual determinations, found that Yasin's testimony was lawfully admitted, and affirmed the magistrate judge's finding of probable cause.

Atuar filed a timely notice of appeal on November 8, 2004.

II.

A federal district court has jurisdiction to conduct a limited review of an extradition proceeding pursuant to a petition for habeas corpus. <u>Fernandez v. Phillips</u>, 268 U.S. 311, 312 (1925);

9

see also Plaster v. United States, 720 F.2d 340, 347 (4th Cir. 1983). We review the district court's final order denying the petitioner's habeas corpus petition pursuant to 28 U.S.C. § 2253(a).

In a habeas corpus review of an extradition hearing, a court considers whether the magistrate judge certifying the extradition had jurisdiction, whether the treaty at issue covers the offense charged and whether there was competent evidence introduced at the hearing "warranting the finding that there was reasonable ground to believe the accused guilty." Fernandez at 312. In addition, a reviewing court may consider whether the petitioner's extradition would violate certain constitutional rights. See Plaster at 349.

On appeal, the petitioner argues that the United States' introduction of the coerced testimony of Yasin at Atuar's extradition hearing violated his due process rights under the Constitution. In the alternative, the petitioner argues that a magistrate judge is bound by Article 15 of CAT, which bars evidence obtained by torture from all judicial proceedings. Finally, the petitioner argues that the introduction of coerced testimony violates the Extradition Treaty, itself.

The petitioner concedes that the magistrate judge had jurisdiction and that the crime for which extradition is sought is covered by the Extradition Treaty. Accordingly, this Court's review is limited to considering the petitioner's due process claim and whether there was "any evidence" introduced at the hearing

10

"warranting the finding that there was reasonable ground to believe the accused guilty." <u>Fernandez</u> at 312. When considering whether there was "any evidence," we must determine whether evidence establishing probable cause at an extradition hearing must pass muster pursuant to our Constitution or Article 15 of CAT.

## III.

We first turn to the petitioner's constitutional argument, which relies on the Fifth Amendment's due process clause. The Supreme Court warns that "any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution." <u>Mathews v. Diaz</u>, 426 U.S. 67, 81 (1976).

Nevertheless, we have long held that foreign policy implications of a refusal to extradite are insufficient to divest this court of its authority to grant habeas corpus relief when a petitioner's valid constitutional rights would be violated by extradition. <u>Plaster</u> at 350. Keeping these obligations in mind, we review the nature of the Fifth Amendment protections available to Atuar in this case.

## A.

In determining that Atuar's constitutional rights were not violated, the district court relied primarily on <u>United States v.</u>

Verdugo-Urquidez, 494 U.S. 259 (1990), a Fourth Amendment case. Thus, the district court focused on the fact that the testimony which Autuar sought to exclude was obtained from a non-citizen by Turkish officials operating in Turkey. However, Verdugo-Urquidez specifically distinguishes Fourth Amendment protections from Fifth Amendment protections, "which [were] not at issue in [that] case." Id. at 264. Where the Fourth Amendment prevents unreasonable searches and seizures by government agents presumably acting in the field, the Fifth Amendment is fundamentally a "trial right," and protects an individual from admission of certain evidence at trial. Id.

Here, the petitioner relied, and continues to rely, on the Fifth Amendment, arguing that the constitutional violation occurred when coerced testimony was introduced by the United States in an extradition hearing conducted within our federal court system. Accordingly, we do not believe that Verdugo-Urquidez is dispositive of Atuar's Fifth Amendment claim, and we must turn to the Fifth Amendment, itself, to determine whether the petitioner's argument has merit.

B.

The Fifth Amendment protects "any person" from being "deprived of life, liberty, or property, without due process of law." U.S.

12

Const. amend. V.[6]  Despite the plain meaning of the phrase, "any person," the Court has consistently held that the Fifth Amendment is generally inoperative beyond territory over which the United States exercises "plenary and exclusive jurisdiction."  Rasul v. Bush, 542 U.S. 466, 1295 S. Ct. 2686 (2004); see also Johnson v. Eisentrager, 339 U.S. 763, 783 (1950); Verdugo-Urquidez at 269.[7] However, an alien within the United States' plenary and exclusive jurisdiction enjoys Fifth Amendment protections, "[e]ven one whose presence in this country is unlawful, involuntary, or transitory . . . ."  Mathews v. Diaz, 426 U.S. at 77; see also Wong Wing v. United States, 163 U.S. 228, 238 (1896)(aliens "within the territorial jurisdiction" of the United States are protected by the due process clause).  Accordingly, Atuar, who is subject to statutory proceedings against him in the United States, enjoys certain due process protections.  Id.

The petitioner urges us to adopt an exclusionary rule based on

---

[6]The Fifth Amendment also protects a defendant from being "compelled in any criminal case to be a witness against himself." This right is not at issue here because Atuar is not seeking to suppress his own confession.

[7]We recognize that the Court has left open the possibility that both Fourth and Fifth Amendment protections could be extended to an alien in a foreign land where the person at issue had significant connections to the United States at the time the alleged violation occurred.  Central to the holding in Verdugo-Urquidez was the fact that the defendant "had no previous significant voluntary connection with the United States."  Id. at 271 (emphasis added).  The defendant does not argue that Yasin had any connections with the United States when he was allegedly tortured, and therefore, we need not address this issue here.

13

our Constitution against the introduction of coerced testimony in an extradition hearing. While we acknowledge that a magistrate judge should consider all relevant circumstances surrounding evidence in certain circumstances as discussed below, we decline to read the general requirements of due process to require the application of an exclusionary rule in this instance.

As a general principle, due process prohibits the United States from using involuntary statements in a criminal proceeding that were obtained through torture or other mistreatment. Jackson v. Denno, 378 U.S. 368, 377 (1964); see also In Re Guantanamo Detainee Cases, 355 F. Supp. 2d 443, 447 (D.D.C. 2005). However, an extradition hearing is not a "criminal proceeding." Desivla v. DiLeonardi, 181 F.3d 865, 868 (7th Cir. 1999)(noting that extradition hearings are handled pursuant to civil rules); United States v. Yousef, 327 F.3d 5, 142 n.66 (2d Cir. 2003)(not a criminal proceeding); Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 828 (11th Cir. 1993)(noting that neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence are applicable to extraditions). By distinguishing between an extradition hearing and a criminal proceeding, courts have consistently held that an accused is not afforded certain constitutional rights in an extradition hearing.[8]

---

[8]For example, the Sixth Amendment right to a speedy trial does not apply to extradition proceedings. Martin at 829; Sabatier v. Dabroski, 586 F.2d 866, 869 (1st Cir 1978); Jhirad v. Ferrandina, 536 F.2d 478, 485 n.9 (2d Cir. 1976). Moreover, certain evidence

While an accused has certain due process rights in extradition proceedings,[9] such proceedings are not designed to determine the guilt or innocence of the accused, and therefore, certain due process protections are simply not applicable. Merino v. United States Marshal, 326 F.2d 5, 12 (9th Cir. 1963); Sayne v. Shipley, 418 F.2d 679, 685 (5th Cir. 1969); see also Coleman v. Burnett, 477 F.2d 1187, 1201-02 (D.C. Cir. 1973). Extradition hearings have never required evidence sufficient to convict and are limited to establishing probable cause. Peroff v. Hylton, 542 F.2d 1247, 1249 (4th Cir. 1976)(certification of extradition consists of an inquiry into presence of probable cause).[10] Instead, a magistrate judge conducting an extradition certification proceeding looks for

---

ordinarily excluded in a criminal proceeding may be admitted in an extradition hearing. Bovio v. United States, 989 F.2d 255 (7th Cir. 1993)(accomplice testimony and hearsay admissible in extradition hearing); Mainero v. Gregg, 164 F.3d 1199 (9th Cir. 1999)(hearsay evidence admissible); United States ex rel. Klein v. Mulligan, 50 F.2d 687 (2d Cir. 1931)(evidence need not pass technical rules governing admissibility in criminal trials). Finally, an accused cannot introduce evidence in the nature of a defense, such as insanity, Charlton v. Kelly, 229 U.S. 447, 462 (1913), or alibi, Desmond v. Eggers, 18 F.2d 503, 505-506 (9th Cir. 1927).

[9]An accused has a due process right to enforce the terms of a plea bargain in the context of extradition. Plaster, 720 F.2d at 352 (promise not to extradite); see also Geisser v. United States, 513 F.2d 862, 864 (5th Cir. 1975)(promise to use best efforts to avoid extradition).

[10]Indeed, the Extradition Treaty at issue in this case specifically requires evidence submitted at a hearing to be "such evidence as, according to the laws of the Requested Party, would justify arrest and committal for trial . . ." Extradition Treaty, Art. 7, (1)(c).

15

evidence "sufficient to cause a person of ordinary prudence and

caution to conscientiously entertain a reasonable belief of the

accused's guilt."  Coleman at 1201-02; Peroff at 1249.

As stated above, the Supreme Court has frequently "cautioned

against expanding currently applicable exclusionary rules by

erecting additional barriers to placing truthful and probative

evidence" before a jury.  Connelly, 479 U.S. at 166 (quoting Lego

v. Twomey, 404 U.S. 477, 488-489 (1972))(internal quotation marks

omitted).  This warning applies with greater force in the context

of an extradition hearing where evidence is presented to a judge

rather than a jury.  As this Circuit has held, "cases involving a

conflict between the government's power to extradite and an

individual's asserted constitutional rights are not well suited to

formalized proceedings in which rigid rules of evidence and

procedure are employed."  Plaster at 349.

We therefore hold that, when reviewing a petition for

extradition for the purpose of certification, a magistrate judge is

not constitutionally barred from considering evidence submitted by

the requesting state.  See Collins v. Loisel, 259 U.S. 309, 315-16

(1922)(evidence submitted through extradition request deemed

truthful for determining probable cause); In Re Atta, 706 F. Supp.

1032, 1051 (D.N.Y. 1989)("The court must look at circumstances as

a whole to determine whether probable cause exists."); see also

United States v. Kin-Hong, 110 F.3d 103, 120 (1st Cir. 1997)(mere

16

existence of unbiased hearing before independent judiciary satisfies due process). Of course, due process requires a magistrate judge to consider such evidence in its proper context. <u>Atta</u> at 1051; <u>Gill</u> at 1046.[11] In certain circumstances, due process also requires the magistrate judge to consider evidence submitted by the accused that explains or negates probable cause. <u>See, e.g.</u>, <u>Hooker v. Klein</u>, 573 F.2d 1360, 1369 (9th Cir. 1978); <u>Gill</u> at 1046.

Here, Atuar's extradition certification hearing was conducted within the appropriate constitutional parameters. Specifically, the magistrate judge correctly considered evidence presented by the accused through which Atuar sought to explain the 1991 testimony of Yasin. The magistrate judge then explained his finding that the 1991 testimony was more reliable than the 2003 retraction. This is all that due process requires in an extradition hearing.

IV.

We now turn to the petitioner's argument that CAT applies to exclude evidence presented by a foreign nation for the extradition of an individual pursuant to the Extradition Treaty at issue in this case. Specifically, the petitioner argues that the

_____

[11]The probable cause standard in an extradition hearing is not "toothless." <u>Kin-Hong</u> at 121. Due process requires that the magistrate judge weigh each piece of evidence offered by the requesting country. <u>See</u> <u>Bingham v. Bradley</u>, 241 U.S. 511, 517 (probable cause in extradition hearing requires "competent and adequate evidence"); <u>see also</u> <u>Kin-Hong</u> at 121 ("a confession obtained by duress is inherently unreliable and would be given little weight even if the confession were authenticated").

17

affirmative language of CAT's Article 15 does not require further enabling legislation to effectively prohibit a court from considering evidence obtained by torture. The petitioner contends that the United States Senate's non-self-executing declaration is not controlling because (1) the Senate may only give advice and consent, not change the terms of a treaty, and (2) even if the Senate had the constitutional authority to declare CAT non-self-executing, such a declaration is intended only to prevent a private cause of action, and does not affect the United States' obligation under international law to refrain from considering certain evidence.

Even if CAT were self-executing, or at the very least, applicable as a constitutionally ratified treaty pursuant the habeas corpus statute,[12] the proscriptions set forth in CAT would

---

[12]This Circuit has previously rejected the argument that 28 U.S.C. § 2241 transforms the Geneva Convention, a non-self-executing treaty, into a judicially enforceable "private right of petition." Hamdi v. Rumsfeld, 316 F.3d 450, 468-69 (2003), vacated by Hamdi v. Rumsfeld, 124 US 507 (2004)(hereinafter "Hamdi II"). However, Hamdi II vacated this Circuit's holding, finding that the writ of habeas corpus "allows the Judicial Branch to play a necessary role in maintaining this delicate balance of governance, serving as the important judicial check on the Executive's discretion in the realm of detentions." Id. at 2651. While Hamdi was reversed by Hamdi II on constitutional rather than treaty grounds, both the plurality and concurring opinions in Hamdi II relied, in part, on the non-self-executing Geneva Convention to articulate the petitioner's rights. See e.g., Hamdi II at 2642 (relying on Geneva Convention to find "detention may last no longer than active hostilities") (plurality); id. at 2660 (holding government required to show "detention conforms to the laws of war")(Souter, J. and Ginsburg, J., concurring). In Goldstar

18

not help the petitioner in this case.  Article 15 of CAT provides in pertinent part:

> any statement which is established to have been made as a result of torture shall not be invoked as evidence in any proceedings, except against a person accused of torture as evidence that the statement was made.

As a preliminary matter, we recognize a possible ambiguity in the magistrate judge's findings.  His opinion indicates that Yasin was likely tortured at the time he gave certain testimony: "It is evident <u>from the documents of proceedings in Turkey in 1991</u> that Mr. Yasin was interrogated and tortured shortly after his arrest on May 3, 1991, and at the time he made his May 12 1991, statement." J.A. 39 (emphasis added).  However, the magistrate judge later finds that "there is no evidence corroborating Mr. Yasin's contention that he was subject to torture when he made his statement in May, 1991."  J.A. 39.

<u>(Panama) S.A. v. United States</u>, 967 F.2d 965, 969 (4th Cir. 1992), this Circuit recognizes that all "treaties, <u>even NSE treaties</u> set forth <u>substantive rules of conduct</u> . . . ," though the latter do not provide a defendant with a right of action.  <u>Id.</u> at 968 (quoting <u>Argentine Republic v. Amerada Hess Shipping Corp.</u>, 488 U.S. 428, 442 (1989))(emphasis added).  Accordingly, we recognize the possibility that a habeas corpus petition may require a court to review a particular detention in light of a non-self-executing but constitutionally ratified treaty.  <u>See</u> <u>Ogbudimkpa v. Ashcroft</u>, 342 F.3d 207, 218, n. 22 (3d Cir. 2003)(superceded by statute on other grounds).  As <u>The Federalist</u> states, "Laws are a dead letter without courts to expound and define their true meaning and operation.  The treaties of the United States to have any force at all, must be considered as part of the law of the land.  Their true import as far as respects individuals, must, like all other laws, be ascertained by judicial determinations." <u>The Federalist No. 22</u> (Alexander Hamilton).

19

In reviewing the record, we do not believe that the petitioner "established" that Yasin's statements were made "as the result of torture" as required to invoke the protections of Article 15 of CAT. While we recognize that Yasin declared in open court that he had been kept in torture for fifteen days, the context of his statements is important. At the time of the statement, Yasin was explaining to the Turkish court his inability to escape. Accordingly, the word is used idiomatically rather than literally, and does not establish torture.

Moreover, Yasin confirmed his identification of Atuar before public prosecutors, again before the Minor Court of Petty Offenses and again before the Antalya First Criminal Court. J.A. 137. After his case was transferred to the Izmir State Security Court, Yasin once again confirmed his identification of Atuar. At this time, Yasin was several months removed from the incidents of his initial detention, he was represented by an attorney and his case was reviewed by a three-judge panel. J.A. 167. After reviewing Yasin's testimony in light of the evidence presented at the hearing, the Izmir State Security Court found Yasin's testimony identifying Atuar to be competent, true and supported by the evidence. Id. In the context of an extradition hearing where evidence presented by the requesting country is presumed competent, we must give great weight to the factual determinations of the

20

three tribunals, which independently reviewed evidence and testimony in Yasin's case. See Quinn v. Robinson, 783 F.2d 776, 815 (9th Cir. 1986).

The fact that Yasin waited eleven years before retracting his statement when he had several occasions to do so at an earlier date is highly indicative that Yasin's confession was not, in fact, induced by torture. In addition, because the extradition hearing was conducted pursuant to a valid extradition treaty, the United States magistrate judge is required to give appropriate weight to State Penal Court's review of Yasin's confession in which they indicated that the facts were "confessed during interrogation," "verified by the records prepared by those authorized to serve as public officials," and "understood" to be "correct." J.A. 113.

Accordingly, we find in the alternative that Atuar's extradition hearing did not violate Article 15 of CAT, and that the magistrate judge did not err in certifying Atuar's extradition.

V.

Because we find that Atuar is not imprisoned in violation of his rights under the United States Constitution or United Nations Convention Against Human Torture, we affirm the final judgment of the District Court denying the Atuar's habeas corpus petition, for

21

the reasons stated above.

AFFIRMED

TRAXLER, Circuit Judge, concurring:

I concur in parts I, II and III of Judge Stamp's opinion, as well as the result reached in Part IV. However, I would reject Atuar's argument that the lower court violated Article 15 of the Convention Against Torture ("CAT") on the grounds that the CAT is not self-executing.

"International treaties are not presumed to create rights that are privately enforceable" in the absence of implementing legislation from Congress. Goldstar (Panama) S.A. v. United States, 967 F.2d 965, 968 (4th Cir. 1992). A self-executing treaty is one that "evidences an intent to provide a private right of action," id., and therefore does not require "domestic legislation . . . to give [it] the force of law in the United States," Trans World Airlines, Inc. v. Franklin Mint Corp., 466 U.S. 243, 252 (1984). Conversely, non-self-executing treaties "do not create judicially-enforceable rights unless they are first given effect by implementing legislation." Auguste v. Ridge, 395 F.3d 123, 132 n.7 (3d Cir. 2005); see United States v. Thompson, 928 F.2d 1060, 1066 (11th Cir. 1991) ("[A] treaty must be self-executing in order for an individual citizen to have standing to protest a violation of the treaty.").

22

On October 27, 1990, when the Senate adopted a resolution of advice and consent to ratification of the CAT, it appended a declaration that the provisions of articles 1 through 16 of the CAT are not self-executing. See 136 Cong. Rec. S17486-01, S17492 (1990). This declaration reflected the intent of the executive branch as well. President Reagan, who signed the CAT, sent the treaty to the Senate for approval with a statement that "any further implementation" should be left "to the domestic legislative and judicial process" and recommended that the Senate therefore adopt a declaration "that the provisions of Articles 1 through 16 of [the CAT] are not self-executing." See Ogbudimkpa v. Ashcroft, 342 F.3d 207, 212 (3d Cir. 2003) (recounting ratification history of the CAT). Thus, I would conclude that the CAT is not self-executing. See, e.g., Raffington v. Cangemi, 399 F.3d 900, 903 (8th Cir. 2005); Castellano-Chacon v. INS, 341 F.3d 533, 551 (6th Cir. 2003); Saint Fort v. Ashcroft, 329 F.3d 191, 202 (1st Cir. 2003). Unlike Article 3 of the CAT, which Congress implemented by passing the Foreign Affairs Reform and Restructuring Act of 1998, see Auguste, 395 F.3d at 132-33, Article 15 does not have implementing legislation. As a result, I would hold that Atuar may not seek judicial enforcement of his CAT claim.

23

DUNCAN, Circuit Judge, concurring:

I concur in Judge Traxler's opinion and concur in the judgment.