**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSE LUIS MUNOZ SANTOS, *Petitioner-Appellant*, | No. 12-56506 |
| v. | D.C. No. 2:11-cv-06330-MMM |
| LINDA R. THOMAS, Warden, *Respondent-Appellee.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Margaret M. Morrow, District Judge, Presiding

Argued and Submitted
November 20, 2014—Pasadena, California

Filed March 9, 2015

Before: Mary M. Schroeder and Jacqueline H. Nguyen,
Circuit Judges, and Jack Zouhary, District Judge.[*]

Opinion by Judge Nguyen

---

[*] The Honorable Jack Zouhary, District Judge for the U.S. District Court for the Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Habeas Corpus/Extradition

The panel affirmed the district court's denial of habeas relief from a magistrate judge's order certifying Jose Munoz Santos' extradition to Mexico on kidnapping charges.

The panel held that the magistrate judge, serving as the extradition court, properly excluded from its probable cause determination evidence that two witnesses, who had provided key inculpatory statements, later recanted and stated their statements were obtained by torture. The panel explained that in a case like this one, where torture allegations are inextricably intertwined with the witnesses' recantations, the evidence was properly excluded because its consideration would have required a mini-trial on whether the witnesses' initial statements were procured by torture.

The panel concluded that the district court properly denied the habeas petition because the extradition court's probable cause determination was supported by competent evidence.

### COUNSEL

Matthew B. Larsen (argued), Deputy Federal Public Defender, and Sean K. Kennedy, Federal Public Defender, Los Angeles, California, for Petitioner-Appellant.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Aron Ketchel (argued), and Robert E. Dugdale, Chief, Criminal Division, Assistant United States Attorneys, and André Birotte Jr., United States Attorney, Los Angeles, California, for Respondent-Appellee.

## OPINION

NGUYEN, Circuit Judge:

Jose Munoz Santos ("Munoz") appeals the district court's denial of habeas relief from a magistrate judge's order certifying his extradition to Mexico on kidnapping charges. He argues that the magistrate judge erroneously excluded evidence that two witnesses, who had provided key inculpatory statements, later recanted and stated that their statements were obtained by torture. We find no error. The evidence of torture was, as Munoz concedes, inextricably intertwined with the witnesses' recantations. As a result, considering the witnesses' claims of torture would have required the magistrate judge, serving as the extradition court, to weigh conflicting evidence and make credibility determinations. Under these circumstances, the extradition court properly excluded this evidence. We affirm.

## BACKGROUND

### A.  Evidence Supporting the Extradition Certification

In support of its extradition request, the government of Mexico provided statements from five witnesses implicating Munoz in the alleged kidnapping for ransom of Dignora Hermosillo Garcia ("Hermosillo") and her two children. According to Hermosillo, she and her two young daughters

were abducted from their home in the evening of August 18, 2005, by a masked man holding a gun. She later identified Fausto Librado Rosas Alfaro ("Rosas") as the masked gunman. Rosas forced Hermosillo and her children into Hermosillo's jeep and drove them away at high speed. Rosas tugged on his mask as he drove and Hermosillo saw that he had a large mark, like a mole or a scar, on his nose. Rosas asked her for information about her husband's work and daily routine, and later, for her bank card PIN number. At one point, Rosas stopped the vehicle to tape his captives' mouths, hands, and feet. He eventually took one child out of the car and abandoned her, and later did the same to the second child. After more driving, he left Hermosillo tied up by a tree. The younger of Hermosillo's daughters was later found dead. Hermosillo's husband, Roberto Castellanos Meza ("Castellanos"), confirmed that his wife and daughters went missing in the evening of August 18, 2005.

Rosas gave a statement, dated March 27, 2006, admitting to being the masked gunman who abducted Hermosillo and her daughters. He identified petitioner Munoz as a chief orchestrator of the kidnapping, and attested to the participation of Jesus Servando Hurtado Osuna ("Hurtado"). Hurtado also gave a statement, dated March 14, 2006, in which he admitted to his role as the lookout on the day of the kidnapping. Hurtado corroborated Rosas' identification of Munoz as an orchestrator of the scheme.

Finally, the Mexican government provided a statement of Benigno Andrade Hernandez ("Andrade"), asserting that Rosas and Munoz approached him in early August 2005 to help them pull a "job" that involved asking "Beto" for 2 million pesos. The parties do not dispute that "Beto" is a

common nickname for "Roberto," the first name of Hermosillo's husband.

Based on these five statements—of Hermosillo, Castellanos, Rosas, Hurtado, and Andrade—the extradition court found that there was probable cause to believe that Munoz was guilty of the alleged kidnapping, and accordingly certified extradition. *In re Extradition of Santos*, 795 F. Supp. 2d 966, 979–83 (C.D. Cal. 2011).

## B. Excluded Statements

In certifying extradition, the extradition court excluded from its consideration the following six statements—four from Hurtado, and two from Rosas. *Id.* at 987–90.

On March 22, 2006, Hurtado stated that he "do[es] not ratify" his prior statement implicating Munoz because it was signed "upon torture," and is "false." The remainder of the statement details the torture and other abuse that he suffered. In a statement dated May 25, 2006, Hurtado stated that his prior statement of October 12, 2005, was made "under torture."[1] Hurtado also denied any involvement in the alleged kidnapping. Next, on November 21, 2006, Hurtado asserted that on August 18, 2005 (the day of the alleged kidnapping), a taxi driver took him to a location where he had been performing carpentry work. He stated that he was tortured,

---

[1] The extradition court did not address Hurtado's October 12, 2005 statement, which contains a dramatically different description of the events on the day of the alleged kidnapping, but also makes no allegations of torture. Munoz does not contend that the extradition court's silence as to this statement constitutes error. We therefore express no view on the significance, or lack thereof, of Hurtado's October 12, 2005 statement.

and presented with a written statement, which he signed. He was told that he would be killed if he changed his statement. Finally, on June 10, 2009, Hurtado stated that he does not know Munoz or Rosas. He also renewed his claims that he was subjected to torture and beatings.

Similarly, Rosas stated on May 25, 2006, that he was "forced to sign" his prior statement implicating Munoz and others in the alleged kidnapping, under "physical and oral" pressure, including threats to the wellbeing of his family. Rosas added that he wished to "retract" his prior statement. On June 20, 2006, Rosas elaborated on the threats made against his family, and "den[ied] the parts" of his prior statement that implicated him in the kidnapping.

The extradition court excluded these statements from its probable cause determination. Relying on *Barapind v. Enomoto*, 400 F.3d 744, 749 (9th Cir. 2005) (en banc) (per curiam), the extradition court stated:

> recantation evidence is contradictory evidence, and . . . the complex, nuanced fact-intensive inquiry into the comparative reliability of inculpatory statements and recantations, including the circumstances under which the statements were obtained, is appropriately reserved for determination by courts of the requesting state, which have access to the full panoply of evidence.

*In re Extradition of Santos*, 795 F. Supp. 2d at 989 (citing *Barapind*, 400 F.3d at 749).

Munoz then petitioned for a writ of habeas corpus in the district court. He argued that the extradition court's probable cause determination was not supported by competent evidence because it failed to consider evidence of torture. The district court denied relief, concluding that Rosas' and Hurtado's assertions of torture were "inextricably intertwined" with their recantations and therefore were properly excluded. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The extradition court had jurisdiction pursuant to 18 U.S.C. § 3184. The district court had jurisdiction pursuant to 28 U.S.C. § 2241(a), and we have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(a). As relevant here, "[t]he district court's habeas review of an extradition order is limited to whether . . . there is any competent evidence supporting the probable cause determination of the [extradition court]." *Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir. 2006) (internal quotation marks omitted). We review de novo the district court's decision denying a habeas petition. *Prasoprat v. Benov*, 421 F.3d 1009, 1013 (9th Cir. 2005).

## DISCUSSION

### A. Limited Nature of Extradition Proceedings

Extradition from the United States begins when a foreign nation lodges a request directly with the United States Department of State. *Vo*, 447 F.3d at 1237. After the State Department evaluates whether the request falls within the scope of the relevant extradition treaty, a United States Attorney seeks an arrest warrant in federal district court for the person sought. *Blaxland v. Commonwealth Dir. of Pub.*

*Prosecutions*, 323 F.3d 1198, 1207 (9th Cir. 2003). If a judicial officer—usually a magistrate judge—finds that there is probable cause to "sustain the charge under the provisions of the proper treaty or convention," 18 U.S.C. § 3184, the officer certifies to the Secretary of State that the person is extraditable, *Blaxland*, 323 F.3d at 1208.

Extradition proceedings are limited affairs, akin to "preliminary examinations . . . for the purpose of determining whether a case is made out which will justify the holding of the accused." *Charlton v. Kelly*, 229 U.S. 447, 460 (1913) (quoting *Benson v. McMahon*, 127 U.S. 457, 463 (1888)). A person facing extradition may present evidence that "explains away or completely obliterates probable cause . . . whereas evidence that merely controverts the existence of probable cause, or raises a defense, is not admissible." *Mainero v. Gregg*, 164 F.3d 1199, 1207 n.7 (9th Cir. 1999), *superseded by statute on other grounds*, Pub. L. No. 105-277, § 2242. This rule rests on the principle that a foreign government seeking extradition should not be forced "to produce all its evidence [before the extradition court in the United States], both direct and rebutting, in order to meet the defense thus gathered from every quarter," thereby converting the extradition proceeding "into a full trial on the merits." *Collins v. Loisel*, 259 U.S. 309, 316 (1922) (quoting *In re Wadge*, 15 F. 864, 866 (S.D.N.Y. 1883)). Thus, although "[a]dmission of evidence proffered by the fugitive at an extradition proceeding is left to the sound discretion of the court," the exercise of that discretion is "guided of course by the principle that evidence of facts contradicting the demanding country's proof or establishing a defense may properly be excluded." *Hooker v. Klein*, 573 F.2d 1360, 1369 (9th Cir. 1978).

## B.  "Explanatory" versus "Contradictory" Evidence

Courts have struggled to explain the distinction between admissible "explanatory" or "obliterating" evidence on the one hand, and inadmissible "contradictory" evidence on the other.  *See, e.g.*, *In re Extradition of Strunk*, 293 F. Supp. 2d 1117, 1122 (E.D. Cal. 2003) (describing the distinction between these types of evidence as "metaphysical").  We need not wade into that issue in great depth, however, as our decision in *Barapind* largely guides our analysis in this case.

In *Barapind*, a district judge, sitting as an extradition court pursuant to 18 U.S.C. § 3184, certified Kulvir Singh Barapind's extradition to India.  400 F.3d at 746–47.  The government of India sought Barapind's extradition due to his involvement in several incidents as a member of the All India Sikh Student Federation, a group "dedicated to establishing an independent sovereign Sikh nation."  *Id.* at 747.  In one of the incidents, Barapind allegedly "drove a scooter while a gunman riding with him killed one man and wounded another."  *Id.* at 749.  India relied heavily on the affidavit of Makhan Ram, a witness who identified Barapind as the driver of the scooter.  *In re Extradition of Singh*, 170 F. Supp. 2d 982, 1004–05, 1024 (E.D. Cal. 2001).

In the extradition court, Barapind offered another affidavit from Ram, in which Ram "denie[d] ever having made a statement implicating Barapind or having seen him at the scene of the attack."  *Id.* at 1024.  The extradition court noted Ram's "potential bias against India" based on a claim that he previously had been falsely accused of a crime by the police. *Id.*  The court also pointed to a lack of information concerning the circumstances under which the subsequent affidavit was taken, and about Ram's "background or

political views to enable evaluation of his motives and possible bias." *Id.* The extradition court then certified Ram's extradition, concluding that Ram's "recantation is conflicting and inconsistent with his earlier alleged statements," and that, "[u]nder all the circumstances, the credibility of Makhan Ram's recantation cannot be determined without a trial." *Id.*

We affirmed the certification of extradition as to the charges relating to the above incident. In an en banc ruling, we held that an extradition court may properly exclude recantations or other conflicting statements if consideration of such evidence would require the court to weigh conflicting evidence or make credibility determinations. *Barapind*, 400 F.3d at 749–50; *see also Quinn v. Robinson*, 783 F.2d 776, 815 (9th Cir. 1986) (noting that an extradition court "does not weigh conflicting evidence and make factual determinations"). We concluded:

> The extradition court was supported by competent evidence in finding that Barapind did not obliterate India's showing of probable cause, as [Ram's] more recent affidavit constituted conflicting evidence, the credibility of which could not be assessed without a trial. Because extradition courts do not weigh conflicting evidence in making their probable cause determinations, we find no basis for overturning the extradition court's decision that probable cause of Barapind's guilt existed . . . .

*Barapind*, 400 F.3d at 749–50 (citation, internal quotation marks, and brackets omitted).**[2]**

## C. The Recantation Evidence was Properly Excluded

Here, like Ram's second affidavit in *Barapind*, the subsequent statements of Rosas and Hurtado are recantations; they directly contradict or otherwise challenge these witnesses' initial inculpatory statements.**[3]** Rosas stated that he wished to "retract" his prior statement, and that he "den[ied]" the parts of the statement that implicated him. Hurtado asserted that he "do[es] not ratify" his initial statement, had "nothing to do" with the alleged kidnapping, was performing carpentry work on the day of the alleged kidnapping, and did not know Munoz or Rosas. Determining whether to credit these subsequent statements or Rosas' and Hurtado's initial inculpatory statements would have required the extradition court to weigh conflicting evidence and make credibility findings. We therefore conclude that the

---

**[2]** *Barapind*'s analysis of recantation evidence is largely consistent with the approach of other circuit courts that have addressed this issue. *See Hoxha v. Levi*, 465 F.3d 554, 561–62 (3d Cir. 2006) (holding that the extradition court did not abuse its discretion in excluding a recantation given that the original statement was independently corroborated, and the recantation "provided an alternative and contradictory narrative that can properly be presented at trial"); *Eain v. Wilkes*, 641 F.2d 504, 511–12 (7th Cir. 1981) (holding that the extradition court properly excluded statements offered by a person challenging extradition because the statements "tend to contradict or challenge the credibility of the facts implicating petitioner," and that "such a contest should be resolved at trial" in the country seeking extradition).

**[3]** A recantation is a "retraction" or a "disavowal." *Recantation*, Oxford English Dictionary, www.oed.com/view/Entry/159345?redirectedFrom=recantation#eid (last visited Feb. 2, 2015).

extradition court properly excluded these subsequent statements because they constitute inadmissible recantations. *See Barapind*, 400 F.3d at 749–50.**[4]**  Since Munoz's only challenge to the extradition court's probable cause determination is based on the exclusion of these recantations, we likewise conclude that the probable cause determination was supported by competent evidence. *Cf. Quinn*, 783 F.2d at 815 ("[O]n review we can determine only whether, because of an absence of competent evidence, the magistrate's [probable cause] determination is wrong as a matter of law.").

Munoz argues that two of the challenged statements—Rosas' statement of May 25, 2006, and Hurtado's statement of March 22, 2006—offer no alternate factual account of the kidnapping to compete with the version of events relied on by Mexico in support of its extradition request.  According to Munoz, the recanting statements should not have been precluded as "contradictory" evidence because in these statements, Rosas and Hurtado simply reject their prior inculpatory statements on the ground that they were procured by torture.  Munoz's argument is foreclosed by *Barapind* because there, Ram's recantation also did not offer a competing factual narrative. *See* 400 F.3d at 749.  Rather, Ram stated that he never identified Barapind and was forced by the police to sign a blank sheet of paper. *Id.*  We nonetheless found no error in the extradition court's conclusion that it could not resolve the conflict between

---

**[4]** This conclusion is bolstered by the fact that, like in *Barapind*, Rosas and Hurtado had an incentive to falsely recant, as they presumably faced criminal liability stemming from their own participation in the alleged kidnapping. *Cf. In re Extradition of Singh*, 170 F. Supp. 2d at 1024 (noting the recanting witness's reasons for bias against the Indian government).

Ram's affidavits without a trial. *Id.* at 749–50. The same analysis applies here.

Next, Munoz contends that evidence procured by torture is necessarily not "competent evidence" that can support a determination of probable cause. It is beyond dispute that the use of evidence obtained by torture is "unspeakably inhumane," *Boumediene v. Bush*, 476 F.3d 981, 1006 (D.C. Cir. 2007) (Rogers, J., dissenting), *judgment vacated*, *Al Odah v. United States*, 282 F. App'x 844 (D.C. Cir. 2008), and evidence obtained by torture is inadmissible in domestic criminal proceedings, *cf. Crowe v. County of San Diego*, 608 F.3d 406, 433 (9th Cir. 2010). Here, however, we agree with the district court that the allegations of torture are "inextricably intertwined" with Rosas' and Hurtado's recantations. Each recantation includes both a disavowal of the witness's prior inculpatory statements, as well as allegations that the statements were procured by torture. Indeed, Munoz concedes that the district court correctly characterized the evidence as "inextricably intertwined," and that Rosas and Hurtado are essentially saying, "I was tortured so the things I said the first time are not credible." Thus, in order to evaluate Rosas' and Hurtado's torture allegations, the extradition court would necessarily have had to evaluate the veracity of the recantations and weigh them against the conflicting inculpatory statements. Doing so would have exceeded the limited authority of the extradition court. *See Barapind*, 400 F.3d at 749–50; *Quinn*, 783 F.2d at 815.

We recognize that several extradition courts in this Circuit have, at times, elected not to rely on evidence allegedly obtained by torture, or have considered allegations of torture but found them to be unreliable. *See Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1008 (9th Cir. 2000),

*overruled on other grounds*, *Trinidad y Garcia v. Thomas*, 683 F.3d 952 (9th Cir. 2012); *Mainero*, 164 F.3d at 1206 (noting that the extradition court considered allegations of torture, but ultimately found that there was "no reliable evidence of torture or duress"). Indeed, Munoz cites a different passage in *Barapind*, where we endorsed the extradition court's "incident-by incident" consideration of whether certain evidence was fabricated or procured by torture. *See* 400 F.3d at 748. Some courts in other circuits have taken similar approaches. *E.g.*, *Atuar v. United States*, 156 F. App'x 555, 563 (4th Cir. 2005) (noting that the extradition court "correctly considered" evidence that a prior inculpatory statement was obtained by torture, but found that evidence to be less reliable than the initial inculpatory statement); *Matter of Extradition of Contreras*, 800 F. Supp. 1462, 1469 (S.D. Tex. 1992) (finding recantations alleging torture to be more credible than initial inculpatory statements).

However, none of these cases stands for the proposition that an extradition court must accept as true allegations of torture whenever they are raised, nor do they endorse the weighing of evidence by an extradition court. Rather, these cases reflect the highly fact-intensive nature of these proceedings, and the well-established principle that "[a]dmission of evidence proffered by the fugitive at an extradition proceeding is left to the sound discretion of the [extradition] court." *Hooker*, 573 F.2d at 1369. Under the appropriate circumstances, an extradition court *may* exercise its discretion to consider allegations of torture. But in a case like this one, where torture allegations are inextricably intertwined with the witnesses' recantations, the evidence was properly excluded because its consideration would require a mini-trial on whether the initial statements of Rosas and

Hurtado were procured by torture.  *See Barapind*, 400 F.3d at 749–50.**[5]**

## CONCLUSION

The extradition court did not abuse its discretion in excluding Rosas' and Hurtado's statements alleging torture as contradictory evidence.  In turn, the district court properly denied Munoz's habeas petition because the extradition court's probable cause determination was supported by competent evidence.

**AFFIRMED.**

---

**[5]** The government asserts that any evidence proffered or relied on by a person facing extradition is per se inadmissible if it requires the extradition court to resolve a factual dispute as to any matter.  We need not address this contention because we resolve the case on much narrower grounds, i.e., that Rosas' and Hurtado's allegations of torture were inadmissible, given that those allegations were inextricably intertwined with recantations.